# CRIMINAL CASES.

### Staunton.

## RICHARDSON V. COMMONWEALTH.

### September 16, 1920.

1. HOMICIDE—*Murder—Manslaughter.*—Where a homicide is committed in the course of a sudden quarrel, or mutual combat, or upon a sudden provocation and without any previous grudge, and the killing is from the sudden heat of passion, growing solely out of the quarrel, or combat, or provocation, it is not murder, but is manslaughter only—voluntary manslaughter, if there be no further justification; and involuntary manslaughter if the killing be done in the commission of some lawful act, such as in justifiable self-defense.

2. HOMICIDE—*Murder—Manslaughter—Sudden Heat of Passion.*— The test of whether a killing is from the sudden heat of passion is found in the nature and degree of the provocation and the manner in which it is resented.

3. HOMICIDE—*Murder—Manslaughter—Presumption of Malice.*—It is only where the killing is "without any, or upon very slight, provocation," where the provocation is in fact resented, that malice may be inferred from the mere fact of the killing, and the slayer found guilty of murder. That is to say, in such case, malice, and hence "murder, is presumed from the fact of killing, unaccompanied with circumstances of extenuation;" but, where there is provocation which is more than "very slight," such presumption does not arise.

4. HOMICIDE — *Murder — Manslaughter — Presumption of Malice— Case at Bar.*—In the instant case there was no previous grudge, the homicide was committed in the course of a sudden quarrel, in mutual combat, upon a sudden provocation, which was unquestionably resented, and the provocation was more than "very slight."

   *Held:* That the killing was certainly accompanied with such circumstances of extenuation that malice, and hence murder,

could not be presumed from the fact of the killing, and, there being no other evidence of malice in the case, a verdict of murder in the second degree was not supported by the evidence.

5. HOMICIDE—*Provocation—Evidence—Case at Bar.*—In a prosecution for homicide, the dying declaration of deceased that he was "playing," and that "he was not mad," and that he did not know what made the accused shoot him, is confined to a statement of the inner consciousness and condition of the mind of the deceased, and is not in conflict with the testimony of witnesses which showed that the actual conduct of the deceased and his outward demeanor gave no indication that he was "playing," or that "he was not mad," or that he gave the accused no apparent cause to shoot him.

6. HOMICIDE—*Provocation—Evidence—Case at Bar.*—The accused had the right to act in view of the conduct of deceased as it reasonably appeared to accused at the time; and that conduct in the instant case constituted a provocation for the shooting, which was far in excess of a "very slight provocation."

7. HOMICIDE—*Instructions—Evidence to Support Instructions— Provocation.*—In a prosecution for homicide, where accused acted upon a provocation far in excess of a "very slight provocation," an instruction that a mortal wound given with a deadly weapon, in the previous possession of the slayer, without any or upon "very slight provocation," is *prima facie* wilful, deliberate, and premeditated killing, is inapplicable to the case and without evidence to support it.

Error to a judgment of the Circuit Court of Russell county.

*Reversed.*

In this case the accused was found guilty of murder in the second degree by the verdict of the jury, and he was sentenced to confinement in the State penitentiary for a term of eight years.

As appears from all of the evidence in the case, upon giving full credence to all of the testimony for the Commonwealth, the material facts are as follows:

The homicide occurred late at night on a mountain road, in an automobile in which the accused, the deceased, and

another male passenger, three young ladies, and the automobile driver, were returning from a county fair. The young ladies had attended the fair upon the invitation of the accused and were in his sole care as their escort and protector. The deceased was an entire stranger to the accused and to the young ladies. The automobile was run by its driver for hire, and unexpectedly to the accused took in the deceased and the other male passenger mentioned, on the return trip from the fair. Neither of the latter were with the accused and the young ladies on the trip going to or at the fair.

On the return journey, aforesaid, the deceased was sitting on the left-hand outside rear seat of the automobile. The accused was sitting next to the deceased, and two of the young ladies were sitting on the other end of the same seat, one of them being named Eula Ray. The deceased had been drinking and by his manner gave evidence of being to some extent intoxicated. A short time before the shooting, the deceased asked what kind of girls were those by the deceased, and remarked, "They are the prettiest girls I ever saw in my life, I would marry one of them between two drops of rain." The deceased then leaned across the lap of the accused and attempted to put his hands on one of the girls, and the accused prevented him. by putting his foot up to stop him. The deceased then again leaned over across the lap of the accused and caught one of the girls, Eula Ray, by the leg. She said to the deceased, "You had better attend to your own business, if you know what is best for you." Thereupon, the accused said: "Don't say anything to him, it will cause trouble." The deceased quit his conduct for a few minutes, when the male passenger, aforesaid, addressed the deceased and asked if he was asleep. The deceased said "No," and then leaned over on the accused again in the same way as previously, and the accused thought the deceased had hold of the girl again, and the

accused said to the deceased, "Sit up." The deceased replied, "I will sit any way I God damned please;" seized the accused by the throat, struck the accused in the face with his fist, pulled the accused over down into the seat, had him by the throat, and was "up over him;" and while the accused was being thus choked, he got a pistol out of his pocket and shot the deceased, causing his subsequent death.

The accused testified that he shot the deceased, "because I thought it necessary to save myself."

The accused was twenty-seven years old, his weight at Camp Lee was 112 pounds, and he was discharged from army service because of his physical condition.

The deceased was about forty years of age. His weight is variously stated by the witnesses from 135 to 165 pounds.

The deceased made statements at the hospital after he knew that he could not live, in one of which he said that "he * * * did not know the name of the boy or man who shot him; that he was playing; that he was not mad and * * * that he did not know what made him shoot him." There were other dying declarations of the deceased to the same effect. The deceased did not tell any of the details of the affray.

The testimony for the Commonwealth as well as for the accused is to the effect that, according to his general reputation, the deceased, when sober, was a peaceable citizen, but when under the influence of liquor was a quarrelsome and dangerous man.

Among the instructions given by the court below, at the request of the Commonwealth, was the following:

"6. The court instructs the jury that a mortal wound given with a deadly weapon, in the previous possession of the slayer, without any or upon very slight provocation, is *prima facie* wilful, deliberate and premeditated killing, and throws upon the accused the necessity of proving extenuating circumstances."

*Finney & Wilson,* for the plaintiff in error.

*John R. Saunders, Attorney-General, J. D. Hank, Jr., Assistant Attorney-General,* and *Leon M. Bazile,* for the Commonwealth.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

The questions raised by the assignments of error will be disposed of in their order as stated below.

[1] 1. Was there any evidence before the jury to support their verdict of murder in the second degree, which involves the guilt of malice on the part of the accused?

It has been long settled that where a homicide is committed in the course of a sudden quarrel, or mutual combat, or upon a sudden provocation and without any previous grudge, and the killing is from the sudden heat of passion growing solely out of the quarrel, or combat, or provocation, it is not murder, but is manslaughter only—voluntary manslaughter, if there be no further justification, and involuntary manslaughter if the killing be done in the commission of some lawful act, such as in justifiable self-defense. *Byrd's Case,* 89 Va. 536, 16 S. E. 727; *Read's Case,* 22 Gratt. (64 Va.) 924.

[2, 3] Where a homicide is committed under such circumstances, without any previous grudge, even if the killing be not done in self-defense, it has also been long settled that the test, of whether the killing is from the sudden heat of passion aforesaid, is found in the nature and degree of the provocation and the manner in which it is resented. *Read's Case, supra,* 22 Gratt. (63 Va.) 924. As to the nature and degree of the provocation, where it is in fact resented, it is only where the killing is "without any or upon very slight provocation," that malice may be inferred from the mere

fact of the killing, and that the slayer may be found guilty of murder. That is to say, in such case, as in others, malice, and hence "murder, is presumed from the fact of killing, unaccompanied with circumstances of extenuation" (*Lewis' Case,* 78 Va. 732) ; but, where there is provocation which is more than "very slight," such presumption does not arise. (*Hill's Case,* 2 Gratt. [43 Va.] 599; *Wills' Case,* 32 Gratt. [73 Va.] 932; *Wright's Case,* 75 Va. 914; *Gray's Case,* 92 Va. 772, 22 S. E. 858; *Murphy's Case,* 23 Gratt. [64 Va.] 960; *Jones' Case,* 100 Va. 842, 41 S. E. 951; *Read's Case,* 22 Gratt. [63 Va.] 924; *Horton's Case,* 99 Va. 848, 38 S. E. 184.)

[4] Now in the case before us there was no previous grudge, the homicide was committed in the course of a sudden quarrel, in mutual combat, upon a sudden provocation, which was unquestionably resented, and the provocation, was more than "very slight." Whether the evidence shows that the killing was done in justifiable self-defense, it is unnecessary for us to decide; but it was certainly accompanied with such circumstances of extenuation that malice, and hence murder, could not be presumed from the fact of the killing. There was no other evidence of malice in the case. This being so, there was no evidence whatever before the jury to support their verdict of murder in the second degree.

[5, 6] It is urged in argument in behalf of the Commonwealth, that the dying declaration of the deceased, "that he was playing; that he was not mad    *    *    *    and that he did not know what made (the accused) shoot him," evidences that the provocation was very slight. But such declaration is confined to a statement of the inner consciousness and condition of mind of the deceased. It does not state what his conduct and outward demeanor were at the time. Hence, such statement is not in conflict with the testimony of the witnesses for the Commonwealth who were at the scene of the tragedy, which, in entire accord with the tes-

timony for the accused, shows that the actual conduct of the deceased and his outward demeanor, which resulted in the affray and the fatal shooting, gave no indication that he was "playing," or that "he was not mad," or that he gave the accused no apparent cause to shoot him. On the contrary the reasonable deduction which the accused was justified in drawing from the actual conduct of the deceased at the time, as such conduct is shown by the evidence as aforesaid, was that the deceased first persisted in his insulting conduct towards the young lady, Eula Ray, and, when prevented from continuing in such conduct, followed that by a violent assault upon the accused with the intent to do him bodily harm. The accused had the right to act in view of the conduct of the deceased as it reasonably appeared to the accused at the time. And that conduct constituted a provocation for the shooting which, as aforesaid, was certainly far in excess of a "very slight provocation."

[7] It follows from what we have said that the court below erred in giving the instruction No. 6. It is not a case to which such instruction is applicable. There was, as aforesaid, no evidence whatever to support it.

For the reasons stated, the case must be reversed and a new trial awarded.

*Reversed.*