MICHAEL LEON BOLYARD

v.

COMMONWEALTH OF VIRGINIA

No. 1664-88-3

Decided November 13, 1990

COUNSEL

Robert Austin Vinyard; William P. Sheffield (Vinyard and Moise, on brief), for appellant.

Virginia B. Theisen, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**BARROW, J.**—In this criminal appeal we consider whether an instruction on involuntary manslaughter should have been given when the defendant contended that he acted in self-defense. Since no evidence supports the assertion that homicide resulted from an accident, we concur with the trial court's refusal to give such an instruction.

The defendant shot and killed his father-in-law during a domestic quarrel. The defendant was at the residence of his estranged wife's parents, and engaged in a argument with his wife and members of her family. During the argument the wife's father came into the front yard where the argument was taking place and engaged in argument with the defendant. The father then returned to the house. The defendant continued to argue with his wife and his wife's mother when, according to the defendant, the wife's father came out of the house with a gun. The other witnesses testi-

fied that the wife's father only had a cigarette in his hand. The defendant obtained a shotgun from his automobile. The wife's mother grabbed the shotgun, struggled with the defendant and was wounded in the leg when the gun discharged. The defendant testified that following the struggle with the wife's mother, her father came toward him saying that he was " 'going to blow . . . [the defendant's] head off,' and come up with the gun and I shot him."

The trial court instructed the jury to find the defendant not guilty if they should find the defendant committed the homicide in self-defense. The trial court also instructed the jury that they could find the defendant guilty of first degree murder, second degree murder or voluntary manslaughter. The defendant contends that, in addition, the trial court should have instructed the jury that they could find the defendant guilty of involuntary manslaughter.

■■ Involuntary manslaughter is an accidental homicide, contrary to the intention of the parties, occurring during the performance of an unlawful, but not felonious, act or during the improper performance of a lawful act. *Mundy v. Commonwealth*, 144 Va. 609, 615, 131 S.E. 242, 244 (1926); *Darnell v. Commonwealth*, 6 Va. App. 485, 489, 370 S.E.2d 717, 719 (1988). Under certain circumstances, an accidental homicide occurring during an act of self-defense may constitute involuntary manslaughter. *See Richardson v. Commonwealth*, 128 Va. 691, 695, 104 S.E. 788, 790 (1920). For example, if the deceased is accidentally killed in a struggle as a result of falling and striking an object, or being struck by an overturned object, or the accidental discharge of a weapon during a struggle for its possession, an accused is entitled to an acquittal if acting in self-defense. *Valentine v. Commonwealth*, 187 Va. 946, 953, 48 S.E.2d 264, 268 (1948). If the accused was not acting in self-defense but had engaged in combat with the deceased without reasonably apprehending danger of being killed or of great bodily harm, he would, instead, be guilty of involuntary manslaughter for the accidental death of the victim.

■ Ordinarily, however, self-defense is not applicable to an accidental homicide even though there are instances where an accidental homicide may occur in conjunction with an act of self-defense. *Id.* Where, instead, a defendant's testimony and the testimony of others support only a theory of self-defense, an in-

struction based on a theory of an accidental homicide is inappropriate. Annotation, *Accused's Right, in Homicide Case, to Have Jury Instructed as to Both Unintentional Shooting and Self-Defense*, 15 A.L.R.4th 993 (1982).

■ A jury instruction, even though correctly stating the law, should not be given if it is not applicable to the facts in evidence. *Hatcher v. Commonwealth*, 218 Va. 811, 813-14, 241 S.E.2d 756, 758 (1978); *King v. Commonwealth*, 2 Va. App. 708, 711, 347 S.E.2d 530, 531 (1986). This principle applies as well to an instruction on involuntary manslaughter where the evidence presents only an issue of self-defense. *See Bell v. Commonwealth*, 167 Va. 526, 540, 189 S.E. 441, 448 (1937).

The evidence in this case did not support or present an issue of accidental homicide; it only presented an issue of self-defense. The defendant acknowledged that he deliberately shot the victim; he did not contend that he did so accidentally. He claimed that the victim came toward him with a gun and threatened him. The other witnesses testified that the victim did not have a gun. The jury had to decide whether the defendant reasonably feared that he was in danger of being killed or in danger of great bodily harm; no evidence was presented upon which the jury could find that the defendant had accidentally shot the victim. Therefore, the trial court correctly refused to instruct the jury that they could find the defendant guilty of involuntary manslaughter.

For these reasons, the judgment of conviction is affirmed.

*Affirmed.*

Coleman, J., concurred.

Benton, J., dissenting.

When evidence is proved at trial that would support a conviction for the lesser included offense, the trial judge must, upon request of counsel, instruct the jury as to the lesser included offense. *See McClung v. Commonwealth*, 215 Va. 654, 657, 212 S.E.2d 290, 293 (1975). "It is reversible error for the trial court to refuse to instruct the jury on the lesser offenses charged in the indictment if there is *any* evidence in the record tending to prove such lesser offenses." *Taylor v. Commonwealth*, 186 Va. 587, 591, 43 S.E.2d 906, 908 (1947) (emphasis added). Whether the jury

might have rejected the lesser included offense is immaterial. *Barrett v. Commonwealth*, 231 Va. 102, 107, 341 S.E.2d 190, 193 (1986). This record contains ample evidence to support an involuntary manslaughter instruction.

On February 14, Michael Leon Bolyard drove to the residence of the parents of his estranged wife and arrived at approximately 7 p.m. Upon his arrival and while standing in the front yard, Bolyard engaged in a loud argument with his wife and her relatives, including her mother. At some point during the argument his wife's father came into the yard, engaged in the argument with Bolyard, and returned to the house.

According to Bolyard's testimony, as Bolyard continued to argue with his wife and his wife's mother, his wife's father again emerged from the house with a gun. Bolyard's wife and other relatives, all of whom were Commonwealth's witnesses, testified that the wife's father only had a cigarette in his hand. Bolyard testified that he retrieved his shotgun from his automobile as his wife's father exited the residence with a gun. Bolyard stated that his wife's mother grabbed his shotgun, struggled with him, and suffered a gunshot wound in the leg when the gun accidentally discharged. The wife's mother testified that she did not see a gun or see who shot her. She only recalled hearing a "bang" which she described as "the accident."[1]

Bolyard testified that during the struggle for his gun his wife's father came off the porch but that because of the darkness he could not see where his wife's father was. Bolyard then moved around his automobile and saw his wife's father coming toward him and threatening to "blow [Bolyard's] head off." Bolyard testified that he then shot his wife's father.

Bolyard was tried for murder in the first degree; however, the jury rejected all murder charges and, instead, convicted Bolyard of voluntary manslaughter. It necessarily follows from the verdict that the jury found an absence of malice. From the trial judge's instruction, the jury must have concluded that Bolyard intended to shoot his wife's father. It cannot be determined, though, whether the jury believed that Bolyard intended to kill him. Notwithstand-

---

[1] Bolyard was charged and tried for malicious wounding of his wife's mother and use of a shotgun in the injury of his wife's mother. The jury acquitted Bolyard of both charges.

ing these conclusions, the jury nevertheless could have concluded that Bolyard was entitled to use force in defense of himself.

The majority correctly relies upon *Mundy v. Commonwealth*, 144 Va. 609, 131 S.E. 242 (1926), for the proposition that "[i]nvoluntary manslaughter is the killing of one accidentally, contrary to the intention of the parties, in the prosecution of some unlawful, but not felonious, act; or in the improper performance of a lawful act." *Id.* at 615, 131 S.E. at 244. I disagree with the majority's conclusion that the evidence would not support a finding that the homicide was accidental. If the homicide was unintended, it may be said to be accidental. *See id.*[2] Nowhere does the definition of involuntary manslaughter require that the *act* that precipitates a killing be unintended. The word "accidentally" modifies killing and is defined as "contrary to the intention of the parties." *Id.* at 615, 131 S.E. at 244; *see also* Virginia Model Jury Instructions-Criminal, No. 34.600, *supra* note 2. This adverbial element, "accidentally," may be satisfied by a showing that the killing proximately results from conduct that is so reckless as to indicate a lack of thought. *See Bell v. Commonwealth*, 170 Va. 597, 610-11, 195 S.E. 675, 680-81 (1938). Such a showing requires proof of " 'more than the lack of ordinary care and caution.' " *Fadely v. Commonwealth*, 208 Va. 198, 202, 156 S.E.2d 773, 776 (1967) (quoting *Zirkle v. Commonwealth*, 189 Va. 862, 868, 55 S.E.2d 24, 28 (1949)) (citations omitted). Criminal negligence "is a recklessness or indifference incompatible with a proper regard for human life," and it encompasses a variety of situations. *Bell*, 170 Va. at 611, 195 S.E. at 681.

---

[2]   The Virginia Model Jury Instructions-Criminal, No. 34.600 suggests the following involuntary manslaughter instruction:

> The defendant is charged with the crime of involuntary manslaughter. The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime:
>
> (1) That the defendant killed (name of person); and
> (2) That the killing, although unintended, was the direct result of [negligence; the unlawful performance of a lawful act, accompanied by carelessness; the performance of an unlawful, but not felonious, act, accompanied by carelessness] so great as to show a callous disregard to human life.

\* \* \* \*

> If you find that the Commonwealth has failed to prove beyond a reasonable doubt any one or more of the elements of the offense, then you shall find the defendant not guilty.

No completely satisfactory definition covering every situation has yet been given. The definitions given are restricted almost invariably to the facts of the particular case. The term "gross and culpable negligence" is descriptive of conduct. The very nature of the word "gross" indicates that it is more than mere or ordinary negligence—it is an aggravated or increased negligence. It is such negligence as may be often best evidenced by a series of acts of commission or omission indicating a state of mind or lack of thought of the offender. The commissions or omissions may be dependent, independent, interdependent, or cumulative, provided there is some causal relation to the state of the mind, or to the acts of the offender with the offense charged. The word "culpable," in popular use and acceptation, means deserving of blame or censure. "Gross negligence" is culpable or criminal when accompanied by acts of commission or omission of a wanton or willful nature, showing a reckless or indifferent disregard of the rights of others, under circumstances reasonably calculated to produce injury, or which make it not improbable that injury will be occasioned, and the offender knows, or is charged with the knowledge of, the probable result of his acts.

*Id.* at 611-12, 195 S.E. at 681.

"The question whether a defendant acted with the requisite mental state is an essential question for the jury." *Darnell v. Commonwealth*, 6 Va. App. 485, 492, 370 S.E.2d 717, 720-21 (1988). The killing of one person by another is often said to be "presumptively" second degree murder. But this "so-called 'presumption,' " only amounts to a permissible inference, subject to rejection by the trier of fact. *Bell v. Commonwealth*, 2 Va. App. 48, 53, 341 S.E.2d 654, 656-57 (1986) (citations omitted). The jury rejected that inference in this case. Moreover, there is no direct evidence that Bolyard intended to kill his wife's father. Although the evidence shows that Bolyard shot his wife's father, the Commonwealth relies on circumstantial evidence to establish that Bolyard intended to kill him. Bolyard is likewise entitled to rely on that same circumstantial evidence to establish the absence of intent to kill. Furthermore, Bolyard is entitled to the benefit of any defense shown by the evidence, even if the facts on which the defense is based come from the Commonwealth's evidence and are

inconsistent with Bolyard's own testimony.

In *Jones v. Commonwealth*, 196 Va. 10, 82 S.E.2d 482 (1954), the court recognized that the refusal to instruct the jury on both the theories of accidental killing and self-defense was prejudicial error.

> Different inferences, *i.e.*, accidental killing or killing in self-defense, might be reasonably drawn from what was said and done. Under such circumstances accused was entitled to have both of his theories of the case submitted to the jury, and an appropriate instruction upon the theory of self-defense should have been given by the court. Refusal to instruct upon this theory was prejudicial.

*Id.* at 15, 82 S.E.2d at 485. At Bolyard's trial, as in *Jones*, there was no evidence that the accused "told [anyone] that he was going to kill [the deceased]." *Id.* Likewise, as in *Jones*, "the jury could well conclude that [the accused] neither provoked the encounter [with the deceased] nor willingly entered into mutual combat but merely sought to defend himself when [the deceased] drew his pistol." *Id.*

The facts of this case are somewhat congruent to those in *State v. Hill*, 242 Kan. 68, 744 P.2d 1228 (1987). *Hill* also involved a shooting following a confrontation in the dark between a victim and an accused. The Supreme Court of Kansas held that defendant, who testified that she believed that the deceased had a gun but that she could not see the deceased's hands, was entitled to rely upon the defense of self-defense and also was entitled to an instruction of involuntary manslaughter. *Id.* at 77-78, 744 P.2d at 1235-36. In addressing the question of involuntary manslaughter the court cited the following passage from *State v. Gregory*, 218 Kan. 180, 185-86, 542 P.2d 1051, 1056-57 (1975):

> [I]n repelling an attack one is limited to "that force which *reasonably appears to be necessary* for that purpose." If the jury had found the deadly force employed by [the accused] was 'reasonably necessary' to repel [the victim's] attack, it would have acquitted him. But if it found that force was excessive what could its verdict be? If it found no malice, it could not convict of murder. *If it credited [the accused's] testimony that he did not intend to kill, it could not convict*

*of voluntary manslaughter. Yet the use of excessive force eliminated the statutory justification for the homicide and made it unlawful.* Still, it did not in itself constitute the misdemeanor "unlawful act" under the involuntary manslaughter statute because by definition that would have to be an act 'prohibited' by statute or ordinance. There is, however, another solution to the jury's dilemma. *We think the jury could conclude on the facts of this case that [the accused] had a right of self-defense, and his exercise of that right was a lawful act.* It could also find, however, that shooting [the victim] was not reasonably necessary—after all, his knife was not open when found. *This use of excessive force could be found to be an "unlawful manner" of committing the lawful act of self-defense, and thus supply that requisite element of involuntary manslaughter.*

*Hill,* 242 Kan. at 77, 744 P.2d at 1235 (citations omitted) (emphasis added). The *Hill* court then held:

In the present case, viewing the evidence in the light most favorable to the defendant, the jury could have concluded that the defendant unintentionally killed [the victim] while defending herself, but used unreasonable and excessive force in so doing. A jury might also have concluded that the defendant might have unintentionally killed the victim by acting in a wanton manner, although not acting in self-defense. The defendant had a right to have the jury instructed on involuntary manslaughter, since there appears sufficient evidence in the record by which a jury might reasonably convict the defendant of such an offense, "however weak, unsatisfactory or inconclusive" the evidence may appear to the court. The refusal of the trial court in the present case to instruct the jury on involuntary manslaughter was error.

*Id.,* at 77-78, 744 P.2d at 1235-36 (citation omitted).

If the jury believed that Bolyard was being attacked by his wife's father, Bolyard "had the right to use such force as was necessary to repel the attack." *Valentine v. Commonwealth,* 187 Va. 946, 951, 48 S.E.2d 264, 267 (1948). One who merely undertakes to repel an attack upon his or her person is engaged in a lawful act. *Id.* The defense of one's self is lawful, whether or not it rises

to the level of justifiable homicide.

> [S]ome courts distinguish between the "law" of self-defense, and the "right" of self-defense, holding that only the former is incompatible with a claim of accidental homicide where both defenses rest on the defendant's testimony alone. The former defense, these courts explain, refers to an intentional homicide committed in self-defense, and cannot be reconciled with a concurrent claim by the defendant that the killing was accidental; whereas, the latter applies to an unintentional or accidental killing committed while the defendant was acting in self-defense. There is an advantage to the assertion of the "right" of self-defense, as distinguished from the "law" of self-defense, apart from the availability of the former in conjunction with the defense of accidental homicide based on the defendant's testimony alone: in order successfully to assert the "law" of self-defense, the defendant must have reasonably believed that he was in danger of his life or of serious bodily harm, whereas, the "right" of self-defense exists even if the defendant did not act with due care in the self-protective action he took.

Annotation, *Accused's Right, in Homicide Case, to have Jury Instructed as to both Unintentional Shooting and Self Defense*, 15 A.L.R.4th § 2(b) (1982) (footnote omitted).

Virginia recognizes this distinction.

> "Ordinarily the law of self-defense is not applicable in a case of a killing resulting from an act which was accidental and unintentional, particularly where the facts of the case are not such as would make such law applicable. However, where the defense of excusable homicide by misadventure is relied on, the principles of self-defense may be involved, not for the purpose of establishing defense of self, but for the purpose of determining whether accused was or was not at the time engaged in a lawful act; and it has been held that in such case the right, but not the law, of self-defense is invoked. Accused is entitled to an acquittal where he was lawfully acting in self-defense and the death of his assailant resulted from accident or misadventure, as where in falling he struck or overturned an object and thereby received injuries resulting in his

death, or where in a struggle over the possession of a weapon it was accidentally discharged."

*Braxton v. Commonwealth*, 195 Va. 275, 278, 77 S.E.2d 840, 841-42 (1953) (quoting *Valentine v. Commonwealth*, 187 Va. at 592, 48 S.E.2d at 268) (citations omitted). Where the right of self-defense is involved not for the purpose of establishing the defense itself, but for the purpose of determining whether the accused was at the time engaged in a lawful act, the jury could reject a finding of justifiable homicide but could find excusable homicide, *see Valentine v. Commonwealth*, 187 Va. at 954, 48 S.E.2d at 268 (killing not intended but incidental to excusable defense of self) or could find involuntary manslaughter. *See Richardson v. Commonwealth*, 128 Va. 691, 695, 104 S.E. 788, 790 (1920) (killing done in the commission of the lawful act of self defense).

Defense of self is the lawful act at issue in this case. The death was the result. The jury could have believed from this evidence that the wife's father was advancing with a gun to attack Bolyard and posed a threat to Bolyard's person. The jury could also have believed that the wife's father did not have a gun and that, although he posed a threat to Bolyard, that threat was not sufficient to constitute a fear of death or serious bodily harm. Under either circumstance it was for the jury to determine from "[t]he character of the attack . . . and the manner and means of self defense exercised" whether Bolyard's action amounted to an "improper performance of a lawful act." *Valentine*, 187 Va. at 954-55, 48 S.E.2d at 268. If the jury found that Bolyard's defense of himself was so improper as to constitute criminal negligence so gross as to manifest a callous disregard of human life, but not performed with the intent to kill, it could have returned a verdict of involuntary manslaughter. *See Fadely v. Commonwealth*, 208 Va. at 202, 156 S.E.2d at 776; *Darnell v. Commonwealth*, 6 Va. App. at 489, 370 S.E.2d at 719.

By acquitting Bolyard of the charges of first and second degree murder in the death of his wife's father, in addition to acquitting Bolyard of the malicious wounding of his wife's mother, the jury unmistakably found that Bolyard lacked malice in the shooting. The jury did not, however, necessarily conclude Bolyard intended to kill. Upon the evidence in this record the jury could have found

that Bolyard was being attacked but that by shooting in the darkness in defense of himself, under the circumstances then prevailing, Bolyard "evince[d] a mind reckless of human life" so as to be guilty of involuntary manslaughter. *Pierce v. Commonwealth*, 135 Va. 635, 652, 115 S.E. 686, 692 (1923). Upon the evidence in this case, the jury "would have been justified in taking either view of the evidence," *id.*, and should have been so instructed.

For these reasons, I would reverse the conviction of voluntary manslaughter and remand for a new trial.