COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Chief Judge Huff, Judges Petty and Beales
Argued at Richmond, Virginia


GEORGE ELLIS BROWN, JR.
                                                            OPINION BY
v.        Record No. 0507-16-2                    JUDGE RANDOLPH A. BEALES
                                                           AUGUST 1, 2017
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
W. Reilly Marchant, Judge

Craig S. Cooley for appellant.

Christopher P. Schandevel, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


In a bench trial, the trial court convicted George Ellis Brown, Jr. ("appellant") of one count

of common law involuntary manslaughter related to the death of Philip Whitaker.  The court

sentenced appellant to ten years in prison, with eight years suspended.  In his first assignment of

error, appellant argues that the trial court erred "by applying a less demanding legal definition of

'criminal negligence' than required by Virginia case law."  In his second assignment of error,

appellant contends that the "evidence was insufficient as a matter of law to establish the element of

criminal negligence in the offense of involuntary manslaughter."  For the following reasons, we

affirm the trial court.

I. BACKGROUND

We consider the evidence on appeal "in the light most favorable to the Commonwealth, as

we must since it was the prevailing party" in the trial court.  Beasley v. Commonwealth, 60

Va. App. 381, 391, 728 S.E.2d 499, 504 (2012) (quoting Riner v. Commonwealth, 268 Va. 296,

330, 601 S.E.2d 555, 574 (2004)).  So viewed, the evidence established that appellant worked as a

security guard at the VCU Health System Ambulatory Care Center Pharmacy ("the pharmacy"). Whitaker, the victim in this matter, was a 64-year-old man suffering from heart disease. At the time of his death, Whitaker was taking blood thinner medication. On August 7, 2015, Whitaker arrived at the pharmacy to pick up a prescription that he had been told would be available for pickup at 2:00 p.m. When Whitaker arrived, his medication was not yet ready. Whitaker became agitated and asked to speak with a supervisor.

Ronald LeFever, a pharmacist, responded to Whitaker's complaint. LeFever had known Whitaker for "a number of years" and described him as "one of my friendlier patients." Whitaker told LeFever that he was waiting for a prescription and that he was in a hurry because his ride was waiting for him outside. LeFever agreed to investigate why Whitaker's medication was not yet ready so that it could be taken care of quickly. LeFever informed Whitaker that he could wait at the front window or he could have a seat and return when his name was called. Once LeFever verified the order, he called Whitaker's name on the pharmacy's intercom, directing him to join the back of the pickup line.

Appellant was working as a security guard at the pharmacy on the afternoon of August 7, 2015. When Whitaker's name was called, appellant was standing between the front of the pickup line and the front window. Appellant's job responsibilities included keeping the peace in the line area of the pharmacy by making sure that people did not cut in line. Appellant's job training and instructions required him to resolve disturbances verbally and precluded him from placing his hands on anyone inside the pharmacy.

Appellant had observed Whitaker's interactions with the cashier and LeFever. When Whitaker's name was called on the intercom, Whitaker began to walk back to the cashier window to pick up his medication. On his way to the front window, Whitaker walked in front of appellant. Witnesses testified that appellant ordered Whitaker to go to the back of the pickup line. One

witness testified that appellant "clutched his fist" when he issued the directive. Whitaker informed appellant that he would not wait in line because he had already spent a long time waiting for his medication.

Whitaker then took a couple of steps away from appellant toward the front window to pick up his medication. Appellant followed Whitaker from a position behind and to the right of Whitaker. Appellant then suddenly reached out and grabbed Whitaker from behind with both arms. Appellant used his right hand to grab Whitaker's chest right below the neck – pinning Whitaker's right arm against his body. At the same time, appellant used his left arm to grab and hold on to Whitaker's left arm. One witness described appellant's hold as a "bear hug." Another witness stated that it appeared that appellant's teeth were clenched at the time. Appellant then violently threw Whitaker backwards and down to the floor. Vicki Fields, a witness in the prescription pickup line, testified, "At that point, I saw Mr. Whitaker coming up into the air. His head kind of hit first. I was stunned. I looked over at Mr. Brown like what have you done." Ms. Fields added, "He flew in front of me. I kind of backed up, but he fell in front of me. He was directly at my feet." The trial court found, "[Appellant's] hurling of the decedent was, in fact, so forceful that [appellant's] arms were cast out up and away from his body after he let go of the decedent from the very momentum and force by which he threw him or hurled him."

Because appellant had pinned both of Whitaker's arms, Whitaker was unable to break his fall when he was hurled to the ground. When Whitaker hit the ground, his head struck either the hard linoleum floor or the circular metal base of one of the posts that formed the pickup line. Witnesses testified that Whitaker's impact with the floor or the metal base caused a very loud clap or thump sound. Onlookers collectively gasped and moved away from the area where appellant had thrown Whitaker. Appellant then walked over to the area near Whitaker's head. After kneeling

down to look at Whitaker, appellant looked around and threw his hands up in the air. After checking Whitaker's pulse, appellant told one of the pharmacists to call 911.

First responders transported Whitaker to the emergency room and then to an operating room to be treated for a severe head injury caused by blunt force trauma. Dr. William Broaddus, a neurosurgeon at Virginia Commonwealth University's Medical College of Virginia, treated Whitaker's injuries. He testified that Whitaker's most serious injury was a large acute subdural hemorrhage, which is a collection of blood that develops from a torn blood vessel. Whitaker ultimately died from his injuries.

VCU Police Lieutenant Jonathan Siok observed surveillance footage of the incident prior to speaking with appellant. Appellant told Siok that he was monitoring the pickup line when Whitaker approached him. Appellant told Siok that Whitaker refused to wait in line like the other customers at the pharmacy. When Whitaker walked toward the cashier, appellant claimed that he put his hand in front of Whitaker to stop him. Appellant also claimed that Whitaker turned towards him and lunged at him. At that point, Siok informed appellant that he had previously viewed the surveillance video. Siok then informed appellant that he should carefully consider his statements because those statements would go into the police report. Appellant then changed his story by stating that Whitaker had not lunged at him. Appellant claimed he was only trying to keep control of the pickup line and that he did not intend to hurt Whitaker.

Appellant was later questioned by Richmond Police Detective Michael Gouldman. Appellant admitted that Whitaker had annoyed him by complaining about his medication to the staff of the pharmacy. He told Detective Gouldman that he pushed Whitaker, but that he did not know Whitaker was going to fall to the ground. When the detective asked appellant if he would have liked to have handled things differently, appellant admitted he probably should not have pushed or even touched Whitaker.

Appellant testified in his own defense at trial. Appellant admitted that he overreacted when he put his hands on Whitaker. Appellant maintained that he did not have any intention to harm Whitaker – and that he did not think his actions were likely to cause injury to him. On cross-examination, appellant denied being annoyed by Whitaker just prior to the altercation. He also denied telling Lieutenant Siok that Whitaker had lunged at him. Instead, appellant claimed that he told the officer that Whitaker had lunged forward – but not toward appellant.

II. ANALYSIS

A. Legal Standard for Criminal Negligence

Appellant argues that the trial court erred "by applying a less demanding legal definition of 'criminal negligence'" than that which is required by law in Virginia. The trial court's conclusions as to questions of law are subject to *de novo* review. Rusty's Welding Serv., Inc. v. Gibson, 29 Va. App. 119, 127, 510 S.E.2d 255, 259 (1999).

As a common law crime, involuntary manslaughter is not defined by statute in Virginia. The Supreme Court has defined "the common law crime of involuntary manslaughter as 'the killing of one accidentally, contrary to the intention of the parties, in the prosecution of some unlawful, but not felonious, act; or in the improper performance of a lawful act.'" Noakes v. Commonwealth, 280 Va. 338, 345, 699 S.E.2d 284, 288 (2010) (quoting Mundy v. Commonwealth, 144 Va. 609, 615, 131 S.E. 242, 244 (1926)). In Darnell v. Commonwealth, 6 Va. App. 485, 491, 370 S.E.2d 717, 720 (1988), this Court held that "criminal negligence is an essential element of involuntary manslaughter." The Court explained, "In the absence of a controlling statute, we are persuaded that there should be but one standard of conduct applicable in these involuntary manslaughter cases. Culpable conduct should require proof of recklessness, that is, conduct evidencing either a willful or wanton disregard for the safety of others." Id. (quoting State v. Kernes, 262 N.W.2d 602, 605 (Iowa 1978)). Accordingly, this Court's decision in Darnell held for the first time that criminal negligence

- 5 -

must be proven under *both* theories of common law involuntary manslaughter[1] – (1) the prosecution of an unlawful, but not felonious, act[2] and (2) the prosecution of an improper performance of a lawful act.  Id.

In his first assignment of error, appellant argues that a finding of criminal negligence requires the prosecution to prove that a homicide was not an improbable consequence of a defendant's conduct.  In support of his argument, appellant relies on this Court's decision in Hargrove v. Commonwealth, 10 Va. App. 618, 394 S.E.2d 729 (1990), which states, "To support an involuntary manslaughter conviction, the Commonwealth must prove 'a homicide was not improbable under all of the facts existing at the time, and that the knowledge of such facts should have had an influence on the conduct of the offender.'"  Id. at 620, 394 S.E.2d at 731.  However, the Supreme Court of Virginia has not used the "homicide was not improbable" language in a case involving criminal negligence since 1967.  See Fadely v. Commonwealth, 208 Va. 198, 202, 156 S.E.2d 773, 776 (1967) ("It must be shown that a homicide was not improbable under all of the facts existing at the time, and that the knowledge of such facts should have had an influence on the conduct of the offender.").  In contrast, the Supreme Court has consistently used the language "not

---

[1] The Commonwealth argues that this Court's decision in Darnell was "inconsistent with the common-law principle that an unlawful act resulting in an accidental death, without more, constitutes involuntary manslaughter."  However, this Court's decision in Darnell is binding on this panel under the interpanel accord doctrine.  As the Supreme Court has explained, "a decision of a panel of the Court of Appeals becomes a predicate for application of the doctrine of *stare decisis* until overruled by a decision of the Court of Appeals sitting *en banc* or by a decision of this [Supreme] Court."  Johnson v. Commonwealth, 252 Va. 425, 430, 478 S.E.2d 539, 541 (1996).  Therefore, the Court, as a three-judge panel deciding this appeal today, is unable to reconsider the decision in Darnell because Darnell is binding precedent on a three-judge panel.

[2] The trial court never articulated under which theory the court convicted appellant of involuntary manslaughter.  Pursuant to this Court's holding in Darnell, however, criminal negligence is a required showing under both theories of culpability.

improbable that injury will be occasioned" when it has defined criminal negligence over the last twenty-five years.[3]

The Supreme Court most recently defined criminal negligence in the context of an involuntary manslaughter case in Noakes:

> Gross negligence amounts to criminal negligence "when acts of a wanton or willful character, committed or omitted, show 'a reckless or indifferent disregard of the rights of others, *under circumstances reasonably calculated to produce injury, or which make it not improbable that injury will be occasioned*, and the offender knows, or is charged with the knowledge of, the probable result of his [or her] acts.'"

208 Va. at 346, 699 S.E.2d at 288 (emphasis added) (quoting Brown v. Commonwealth, 278 Va. 523, 528-29, 685 S.E.2d 43, 46 (2009)). In Noakes, the Supreme Court specifically noted that "the Commonwealth did not need to prove that [the defendant] actually knew or intended that [his] conduct would cause, or would likely cause, [the victim's] death, but rather that [the defendant] *should have* known [his] acts created a substantial risk of harm to [the victim]." Id. at 346, 699 S.E.2d at 289 (emphasis in original). Ultimately, the Supreme Court upheld the trial court's finding of criminal negligence because the evidence proved that Noakes's conduct "was wanton and willful, 'showing a reckless or indifferent disregard of [the victim's rights], under circumstances [that made] it not improbable that injury [would] be occasioned, and [Noakes] is charged with the knowledge of [] the probable result of [her] acts.'" Id. at 347, 699 S.E.2d at 289 (quoting Cable v. Commonwealth, 243 Va. 236, 240, 415 S.E.2d 218, 220 (1992)).

---

[3] See Rich v. Commonwealth, 292 Va. 791, 802, 793 S.E.2d 798, 804 (2016); Carosi v. Commonwealth, 280 Va. 545, 556, 701 S.E.2d 441, 447 (2010); Noakes, 280 Va. at 346, 699 S.E.2d at 288; Brown v. Commonwealth, 278 Va. 523, 528-29, 685 S.E.2d 43, 46 (2009); Riley v. Commonwealth, 277 Va. 467, 484, 675 S.E.2d 168, 177 (2009); Morris v. Commonwealth, 272 Va. 732, 739, 636 S.E.2d 436, 439-40 (2006); Jones v. Commonwealth, 272 Va. 692, 698, 636 S.E.2d 403, 406 (2006); Barrett v. Commonwealth, 268 Va. 170, 183, 597 S.E.2d 104, 111 (2004); Gallimore v. Commonwealth, 246 Va. 441, 445-46, 436 S.E.2d 421, 424 (1993); and Cable v. Commonwealth, 243 Va. 236, 240, 415 S.E.2d 218, 220 (1992).

Recently, the Supreme Court used a nearly identical test for criminal negligence in Rich v. Commonwealth, 292 Va. 791, 793 S.E.2d 798 (2016):

> "Gross negligence" is culpable or criminal when accompanied by acts of commission or omission of a wanton or wilful nature, showing a reckless or indifferent disregard of the rights of others, *under circumstances reasonably calculated to produce injury, or which make it not improbable that injury will be occasioned*, and the offender knows, or is charged with the knowledge of, the probable result of his acts.

Id. at 802, 793 S.E.2d at 804 (emphasis added) (quoting Riley v. Commonwealth, 277 Va. 467, 484, 675 S.E.2d 168, 177 (2009)). In this matter, the trial court applied a definition of criminal negligence that closely tracks the language used by the Supreme Court in Noakes and Rich. The trial court found that appellant acted with "a disregard to the safety of others . . . under circumstances reasonably likely or probable to cause injury and under circumstances that [appellant] should have known were reasonably, likely, or probable to cause injury or even serious injury." The trial court further stated:

> I don't think that the defendant knew nor do I think that the defendant should have known that his actions were reasonably likely to cause death. I don't think anybody would have thought that. But the legal standard does not require that. It doesn't require that the Court find that it was reasonably, likely, or probably that he anticipated death. It only requires that the Court finds that it was reasonably, likely, or probable and that he should have known that his actions would cause injury.

In light of these more recent Supreme Court decisions, we disagree with appellant's argument that criminal negligence requires a finding that "a homicide was not improbable" under the facts and circumstances of each case. Therefore, we find that the trial court applied a proper standard of criminal negligence to the facts of this case.

## B. Sufficiency of the Evidence of Criminal Negligence

Appellant next argues that the evidence was insufficient at trial to prove the element of criminal negligence beyond a reasonable doubt. We disagree.

When considering the sufficiency of the evidence on appeal, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004), "[w]e must instead ask whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,'" Crowder, 41 Va. App. at 663, 588 S.E.2d at 387 (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*)). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.

Whether a defendant's conduct is criminally negligent is usually a question for the trier of fact, unless reasonable minds could not differ. See, e.g., Noakes v. Commonwealth, 54 Va. App. 577, 586, 681 S.E.2d 48, 52 (2009), aff'd, 280 Va. 338, 699 S.E.2d 284 (2010). Viewing the totality of the evidence in the light most favorable to the Commonwealth, we find that the evidence here was sufficient for a rational factfinder to conclude that appellant's conduct was criminally negligent.

Whitaker, the victim in this matter, was a 64-year-old man suffering from heart disease. Appellant had observed Whitaker prior to the altercation and was aware that Whitaker was at the pharmacy to pick up his medication. Appellant admitted to detectives that Whitaker's complaints to the staff of the pharmacy about the availability of his medication had annoyed appellant. The evidence also established that Whitaker did nothing to provoke the attack. While appellant

initially told Detective Siok that Whitaker had lunged at appellant first, appellant changed his story when the detective advised him that he had already observed surveillance video of the incident.

The trial judge aptly described the surveillance footage of the attack as "the most important piece of evidence in this case." The video clearly shows that, after a brief exchange of words, appellant came up from just behind the victim and grabbed him with both arms. Appellant's right hand grabbed Whitaker's chest, and his left hand grabbed Whitaker's left arm. It is apparent from the video that Whitaker was not expecting the attack. Appellant then lifted the unsuspecting victim off of the ground in a manner described by one witness as a bear hug. Appellant then violently hurled Whitaker to the floor before Whitaker could break free, defend himself, or brace for the impact.

The trial court found that appellant's "hurling of the decedent was, in fact, so forceful that [appellant's] arms were cast out up and away from his body after he let go of the decedent from the very momentum and force by which he threw him or hurled him." Indeed, the video footage clearly shows the force with which appellant threw Whitaker to the ground, as evidenced by the fact that appellant fully extended his right arm during the throw. Whitaker's head either struck the hard linoleum floor or the circular metal base of a post marking the line for the prescription pickup window. The force of the impact was so great that Whitaker's skull fractured, making a loud "clap" sound that was heard by those who witnessed the incident. The surveillance video and the testimony of witnesses at trial established that people inside the pharmacy gasped and retreated from appellant as Whitaker lay motionless on the floor.

Under these circumstances, we find that a rational factfinder could indeed have concluded that criminal negligence had been proven beyond a reasonable doubt by appellant's unexpected and violent assault of Whitaker. As articulated by the Supreme Court in Noakes, "the Commonwealth did not need to prove that [appellant] actually knew or intended that [his] conduct

would cause, or would likely cause, [the victim's] death. 280 Va. at 346, 699 S.E.2d at 289. Rather, the Commonwealth had the burden to establish that "[appellant] should have known [his] acts created a substantial risk of harm to [the victim]." Id. Based on the totality of the evidence at trial, we find that a rational factfinder could certainly conclude that appellant's conduct was "wanton and willful" in a manner that demonstrated "a reckless or indifferent disregard" for Whitaker's safety, under circumstances that made it "not improbable that injury [would] be occasioned" – and that appellant knew or was charged with "the knowledge of [] the probable result of [his] acts." Id. at 347, 699 S.E.2d at 289; see also Rich, 292 Va. at 802, 793 S.E.2d at 804. For these reasons, we find that the essential elements of criminal negligence were proven beyond a reasonable doubt. Therefore, we affirm the judgment of the trial court.

## III. CONCLUSION

In summary, we reject appellant's argument that criminal negligence requires a finding that "a homicide was not improbable" under the facts and circumstances of each case. As a result, we find that the trial court correctly applied a proper standard for criminal negligence to the facts of this case. In addition, we hold that a rational trier of fact could certainly have found from the evidence presented at trial that appellant's actions were criminally negligent. Therefore, we affirm appellant's conviction for common law involuntary manslaughter.

Affirmed.