PRESENT: All the Justices

RIANA MICHELLE RICH

v.  Record No. 151841

COMMONWEALTH OF VIRGINIA

OPINION BY
JUSTICE CLEO E. POWELL
December 15, 2016

FROM THE COURT OF APPEALS OF VIRGINIA

Riana Michelle Rich ("Rich") appeals from a judgment of the Court of Appeals of

Virginia which affirmed her conviction in the Circuit Court of the City of Virginia Beach ("trial

court") for DUI-reckless-victim permanently impaired ("DUI maiming") in violation of Code

§ 18.2-51.4.[1]  *Rich v. Commonwealth*, Record No. 0565-14-1, 2015 Va. App. LEXIS 320, at *15

(Nov. 10, 2015) (unpublished).  On appeal, Rich argues that the trial court erred in finding that

the evidence was sufficient to prove causation and the criminal negligence element of DUI

maiming, and further, that the Court of Appeals erred in affirming her conviction.[2]

## I.   BACKGROUND

On August 6, 2011, at approximately 2:20 a.m., in clear weather, Daja Young was

driving on Virginia Beach Boulevard.  There were two westbound lanes and two eastbound

---

[1] Rich was also convicted of driving under the influence, in violation of Code § 18.2-266.
She does not contest this conviction on appeal.

[2] On appeal to the Court of Appeals, Rich raised three assignments of error.  The Court of
Appeals, by *per curiam* order, initially denied the petition for appeal as to all assignments of
error.  On three-judge review, however, the Court of Appeals granted an appeal on assignments
of error 1 and 2, the same assignments of error at issue in this appeal, and denied her appeal as to
the third assignment of error (asserting that the trial court erred in making certain findings of
fact) for the reasons stated in the *per curiam* order.  *Rich v. Commonwealth*, Record No. 0565-
14-1 (March 6, 2015) (unpublished).  The Court of Appeals previously held there was sufficient
evidence to support the trial court's factual findings that Rich was sleep-deprived, distracted,
failed to brake, and failed to drive in a manner to avoid the victim. *Rich v. Commonwealth*,
Record No. 0565-14-1, slip op. at 7 (Dec. 5, 2014) (unpublished).  Rich has not assigned error in
this Court to this specific ruling of the trial court or the Court of Appeals.

lanes. Young was traveling westbound in the right hand lane between 15 and 20 miles per hour in a 35 mile-per-hour zone, when she saw something moving off the right side curb. She was driving "very cautiously" and "slow" because she was driving an unfamiliar vehicle. She realized that what she saw coming off the curb, entering her side of the street, was a man (later identified as John Costello) on a motorized electric wheelchair. She testified that Costello was attempting to cross from the Convention Center to the other side of the street where there was a trailer park. The area was "poorly lit," but Young did not turn on her bright lights. She testified she still could have seen Costello even if she had not been going so slowly. Young stopped and allowed Costello to proceed across the lane in front of her. He was traveling about "two or three miles per hour." His wheelchair did not have lights or reflectors, and Young testified he was operating the wheelchair in a very erratic fashion.

As Costello made it to the middle of the road, Young pulled into the left westbound lane, beside Costello, and told him to be careful. She testified she did this because "if [she] was anybody else driving fast, he would have gotten hit if [she] wasn't cautious." Young continued traveling westbound and noticed a vehicle traveling eastbound in the opposite lane. Young estimated that vehicle was traveling about 25 or 30 miles per hour. After that vehicle passed Young, she heard a crash behind her. Through her rearview mirror, Young saw "everything scatter" . . . "the wheelchair go up and everything detach." Before she heard the crash, Young had last seen Costello in the middle of the road "facing partially towards the oceanfront and partially across the street." Young testified that from the time she allowed Costello to pass and she continued westbound to when she heard the crash "[m]aybe a couple seconds . . . [m]aybe thirty seconds or something" passed.

Realizing there had been an accident, Young turned around and returned to the scene where she found Costello lying on the ground and where Rich, the driver of the vehicle that hit the wheelchair, was "just panicking" and "scared." When Young asked Rich what had happened, she said "she was just looking down. And then she said — that's it."

Around the time of the crash, Officer Kolby Reese was in the Convention Center parking lot when he heard "what sounded like a motor vehicle collision" coming from Virginia Beach Boulevard "probably 150 feet, 200 feet" away. Reese looked in the direction of the crash and saw Rich's car stopped in the roadway near the trailer park entrance. Reese went promptly over to the scene, where he found Rich's car stopped in the far right lane facing eastbound, Costello lying unconscious in the roadway in front of the car, and the wheelchair also in the roadway "off to the side." Reese heard Rich say that "she looked down for only a second and didn't see the [wheelchair]."

Officer Colin Mack spoke with Rich at the scene and administered field sobriety tests to her. Mack testified Rich had a very strong odor of alcohol coming from her breath; had bloodshot, watery, and glassy eyes; and was swaying. Rich told Mack several versions of when and how much alcohol she had consumed. At the scene, she stated she had consumed three-quarters of a normal-sized bottle of wine and that she had stopped drinking at 6:00 p.m. On the way to the jail, after her arrest, Rich stated she also had "drinks" at a baseball game she went to with her boyfriend after 7:00 p.m. She said she and her boyfriend went to bars later, but she denied drinking alcohol there. She told Mack she was driving approximately 30 miles per hour, when she leaned over so her boyfriend could light a cigarette for her. Rich demonstrated this action for Mack, who described Rich's actions by stating: "She basically leaned forward and put

her head to the right where [the boyfriend] was and took her eyes off the road. And after that had occurred, when she looked up the crash occurred and she saw the victim in front of her."

At 4:01 a.m., Rich took a breath test, which registered a blood alcohol content ("BAC") of .13. After administration of the test, Rich told Mack she had not gotten a lot of sleep the night before, only two hours, waking up at 8:00 a.m. that morning. Testifying as an expert in breath testing and forensic toxicology, Melissa Kennedy, Supervisor of the Breath Alcohol section of the Richmond office of the Department of Forensic Science, testified that at a BAC of .05, a person starts to have problems with "divided attention." Consequently, reaction time begins to slow, and safe driving is impaired. At a BAC of .10, a person's "glare recovery" can be affected, meaning that nighttime driving is more difficult. At a BAC between .10 and .15, a person may have slurred speech and may stagger while walking. Kennedy testified that intoxication slows everything down for the impaired person, including that person's ability to recognize there might be a problem and react to it. Muscle reactions and perception are slowed. Kennedy testified an individual's BAC decreases at the rate of elimination of .01 to .02 grams per hour.

Testifying as an accident reconstruction expert, Officer Ted Walters, who was part of the Fatal Crash team at the time of the offense, testified about the physical characteristics of the accident and his involvement in the crash investigation. Walters acknowledged he could not know precisely when Costello's wheelchair "entered into [Rich's] lane of travel." However, based on the reconstruction analysis he performed, he determined Costello would have been facing "southbound" at the time of impact and that the front driver's side of Rich's vehicle impacted the right side of Costello's wheelchair. Walters provided photographs of the wheelchair and Rich's car lined up against one another as they would have been at the time of

4

impact, illustrating that the wheelchair was perpendicular to the car. Walters testified there were three streetlights in the area of the accident and lights on the trailer park sign.

Forensic toxicologist Dr. Alphonse Poklis testified as a defense expert regarding the significance of Costello's BAC, which was .22 when tested at 3:10 a.m. that night. Poklis stated Costello was "severely intoxicated" and explained how he would have been "severely impaired by alcohol at a [BAC level of ] .22."

> On the count of driving under the influence, reckless, where the victim is permanently impaired, the court finds the defendant guilty. The court believes her conduct was gross, wanton, and culpable such as to show a disregard for human life.
>
> In addition to the alcohol, the other factors that contributed to that gross, wanton, and culpable finding were sleep deprivation, were the distracted [sic], and failure to maintain a proper lookout. In and of itself the act of asking for a cigarette to be lit was reckless while driving an automobile.
>
> The defendant further failed to brake, and failure [sic] to keep a proper lookout, as I indicated, in that another driver in the same place more or less successfully avoided the victim in this case.

In affirming Rich's conviction for DUI maiming, the Court of Appeals held, in an unpublished opinion, that the evidence was sufficient for a rational factfinder to conclude Rich acted with "a reckless or indifferent disregard for the safety of others" in violation of Code § 18.2-51.4. *Rich*, 2015 Va. App. LEXIS 320, at *14. The Court of Appeals noted that Rich's actions, i.e., her admitted inattentiveness while driving, voluntary consumption of alcohol up to and well beyond the point of intoxication, and voluntary decision to drive while having so little sleep, formed a natural and continuous sequence that caused the accident. *Id.* at *11. Finally, the Court of Appeals determined that although there was evidence Costello was highly

5

intoxicated and operating his wheelchair in an erratic fashion, the evidence failed to demonstrate his actions were an independent, intervening act that alone caused his injuries. *Id.* at *10.

This appeal followed.

## II. ANALYSIS

Code § 18.2-51.4, provides, in pertinent part,

> A. Any person who, as a result of driving while intoxicated in violation of § 18.2-266 or any local ordinance substantially similar thereto in a manner so gross, wanton and culpable as to show a reckless disregard for human life, unintentionally causes the serious bodily injury of another person resulting in permanent and significant physical impairment shall be guilty of a Class 6 felony.

Rich argues the evidence was insufficient to find her guilty of DUI maiming, in violation of Code § 18.2-51.4, because the Commonwealth failed to prove causation and/or that she was criminally negligent.

"In reviewing the sufficiency of the evidence, '[w]e consider the evidence in the light most favorable to the Commonwealth, the prevailing party in the circuit court, and we accord the Commonwealth the benefit of all reasonable inferences deducible from the evidence.'" *Riley v. Commonwealth*, 277 Va. 467, 482-83, 675 S.E.2d 168, 177 (2009) (quoting *Britt v. Commonwealth*, 276 Va. 569, 573, 667 S.E.2d 763, 765 (2008)). "'When a defendant challenges the sufficiency of the evidence, we accord the judgment of a circuit court sitting without a jury the same weight as a jury verdict.'" *Id.* at 483, 675 S.E.2d at 177 (quoting *Britt*, 276 Va. at 573-74, 667 S.E.2d at 765). We will affirm the judgment of a trial court "unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it." Code § 8.01-680.

A. Causation

Rich asserts on appeal that the trial court erred in finding that she was a proximate cause of Costello's injuries because it is impossible to determine how and why the collision occurred. She argues that it was Costello's dangerous and erratic operation of his wheelchair that caused the accident, not her driving. We disagree.

We have not previously addressed the causation element of Code § 18.2-51.4. Therefore, we do so today in accord with our prior cases interpreting the causation element contained in Code § 18.2-36.1[3] (involuntary manslaughter) since the two statutes contain the same causation language. *See*, *e.g.*, *Lawlor v. Commonwealth*, 285 Va. 187, 237, 738 S.E.2d 847, 875 (2013) ("Where the same term is used in different places within a statutory scheme, we apply the same meaning unless the legislature clearly intended a different one." (citing *Eberhardt v. Fairfax County Emps. Ret. Sys. Bd. of Trs.*, 283 Va. 190, 195, 721 S.E.2d 524, 526 (2012))).

"A proximate cause is 'an act or omission that, in natural and continuous sequence unbroken by a superseding cause, produces a particular event and without which that event would not have occurred.'" *Brown v. Commonwealth*, 278 Va. 523, 529, 685 S.E.2d 43, 46 (2009) (quoting *Williams v. Joynes*, 278 Va. 57, 62, 677 S.E.2d 261, 264 (2009)). "Because an

---

[3] Code § 18.2-36.1 provides, in part,

> A. Any person who, as a result of driving under the influence in violation of clause (ii), (iii), or (iv) of § 18.2-266 or any local ordinance substantially similar thereto unintentionally causes the death of another person, shall be guilty of involuntary manslaughter.
>
> B. If, in addition, the conduct of the defendant was so gross, wanton and culpable as to show a reckless disregard for human life, he shall be guilty of aggravated involuntary manslaughter, a felony punishable by a term of imprisonment of not less than one nor more than 20 years, one year of which shall be a mandatory minimum term of imprisonment.

event can have more than one proximate cause, criminal liability can attach to each actor whose conduct is a proximate cause unless the causal chain is broken by a superseding act that becomes the sole cause of the [event]." *Id.* "Only if the conduct of the deceased amounts to an independent, intervening act alone causing the fatal injury can the accused be exonerated from liability for his or her criminal negligence. In such case, the conduct of the accused becomes a remote cause." *Hubbard v. Commonwealth*, 243 Va. 1, 14, 413 S.E.2d 875, 882 (1992).

Rich argues that there is no direct evidence as to how the accident occurred and, therefore, the trial court could only speculate as to how the accident occurred. Rich relies heavily on *Hoffner v. Kreh*, 227 Va. 48, 313 S.E.2d 656 (1984), in support of her argument that the Commonwealth failed to prove how and why the accident happened. The Court in *Hoffner* found,

> There is no evidence, only conjecture, as to how [the victim] became prone in the lane of traffic. He may have fallen asleep, become ill, or sought to commit suicide. He may have rolled into the road from the shoulder just before Kreh's car reached him. There is no way to determine what happened, how long he had been in the road, or whether he had been walking, running, standing, or sitting before lying down."

*Id.* at 53, 313 S.E.2d at 659.

We disagree with Rich's reliance on *Hoffner* and her assertion that under the facts of this case, the Commonwealth's evidence only offered conjecture as to how the accident occurred. We have repeatedly held that the factfinder may draw reasonable inferences from proven facts. *Viney v. Commonwealth*, 269 Va. 296, 301, 609 S.E.2d 26, 29 (2005); *Commonwealth v. Hudson*, 265 Va. 505, 512-14, 578 S.E.2d 781, 785-86 (2003). The facts in *Hoffner* are demonstrably different from those in this case. As we stated in *Hoffner*, there was no evidence

8

from which the trial court could determine how the victim came to be in the road. 227 Va. at 53, 313 S.E.2d at 659. Here, by contrast, there are ample facts from which the trial court could draw reasonable inferences.

Young testified that she observed the victim emerge from the Convention Center side of the street, attempting to cross to the other side where the trailer park was located. Although it was dark, she was able to see the victim and avoid hitting him. The victim, who was traveling "two to three miles an hour" proceeded across Young's lane in front of her. Young observed a vehicle approaching her and within a couple of seconds to thirty seconds, Young heard a crash and observed "everything scatter" in her rearview mirror. The accident scene reconstruction report indicated that the victim was facing southbound at the time of the collision (in the direction of the trailer park) and that the front driver's side of Rich's vehicle impacted the right side of the victim's wheelchair. The wheelchair was perpendicular to Rich's vehicle. The crash occurred in the right hand lane of eastbound traffic. Viewed in the light most favorable to the Commonwealth, there are sufficient proven facts from which the trial court could reasonably infer that Costello was headed from the Convention Center to the trailer park, that he drove his wheelchair in a southerly direction, had traversed three lanes of traffic, and was heading into the fourth lane when he was struck by Rich.

As the Court of Appeals noted, Rich's actions, i.e., her admitted inattentiveness while driving, voluntary consumption of alcohol up to and well beyond the point of intoxication, and voluntary decision to drive while having had so little sleep, formed a natural and continuous sequence that caused the accident. Although there was evidence that Costello was highly intoxicated and was operating his motorized wheelchair in an erratic fashion just prior to the collision, the evidence failed to demonstrate that his actions were an independent, intervening act

9

that alone caused his injuries. This conclusion is supported by the fact that Young testified that, under similar conditions, she was able to see Costello in time to allow him to cross the street.

Accordingly, we hold that the Court of Appeals did not err in concluding that the evidence supported the trial court's judgment that Rich was the proximate cause of the accident. The evidence was sufficient to establish the causation element of Code § 18.2-51.4 because Costello's operation of his motorized wheelchair while in an intoxicated state did not break the chain of proximate causation between Rich's conduct and Costello's injuries.

### B. Criminal Negligence

Rich argues next that the trial court erred in finding her actions rose to the level of criminal negligence necessary to support a conviction for DUI maiming, in violation of Code § 18.2-51.4. In *Riley*, we held that Code § 18.2-51.4 "incorporates, by its terms, the culpability standard found in common law criminal negligence." 277 Va. at 483, 675 S.E.2d at 177. We also reiterated our definition of "criminal negligence in terms of gross negligence." *Id*. at 484, 675 S.E.2d at 177.

> "Gross negligence" is culpable or criminal when accompanied by acts of commission or omission of a wanton or wilful nature, showing a reckless or indifferent disregard of the rights of others, under circumstances reasonably calculated to produce injury, or which make it not improbable that injury will be occasioned, and the offender knows, or is charged with the knowledge of, the probable result of his acts.

*Id*. (quoting *Cable v. Commonwealth*, 243 Va. 236, 240, 415 S.E.2d 218, 220 (1992)).

Here, the evidence presented to the trial court showed that Rich took her eyes off of the road and leaned over toward her intoxicated boyfriend in the passenger seat so he could light a cigarette for her. While she claimed that she only took her eyes off the road for a second, the trial court did not have to believe her self-serving statement. The trial court, sitting as fact-finder, may disbelieve the self-serving testimony of the accused. *See Vasquez v. Commonwealth*,

10

291 Va. 232, 250-51, 781 S.E.2d 920, 931 (2016) ("When considering the statements of a suspect, a factfinder may believe them in whole or in part, as reason may decide.") (citation and internal quotation marks omitted). Rich performed poorly on a series of field sobriety tests administered shortly after the accident. Rich's BAC was tested approximately ninety minutes after the accident and was recorded at .13 – well above the legal limit. Rich also told officers that she had had only two hours of sleep the previous night, from which the trial court could and did infer that she was fatigued while driving. Based on her admitted inattentiveness while driving, her voluntary consumption of alcohol, her level of intoxication, and her voluntary decision to drive while sleep-deprived, we hold that the Court of Appeals did not err in affirming the trial court's judgment that Rich acted with "a reckless or indifferent disregard for the safety of others" within the intendment of Code § 18.2-51.4. *Wright v. Commonwealth*, 39 Va. App. 698, 703, 576 S.E.2d 242, 244 (2003) (discussing standards under Code § 18.2-51.4).

Accordingly, we hold that the Court of Appeals did not err in concluding the judgment of the trial court, finding Rich's actions were criminally negligent, was not plainly wrong or without evidence to support it. The evidence was sufficient to prove the criminal negligence element of Code § 18.2-51.4.

III.  CONCLUSION

For the foregoing reasons, we will affirm the judgment of the Court of Appeals affirming Rich's conviction for DUI maiming, in violation of Code § 18.2-51.4.

*Affirmed*.