PRESENT: All the Justices

BON SECOURS-DEPAUL MEDICAL CENTER, INC.,
T/A DEPAUL MEDICAL CENTER, ET AL.

OPINION BY
v. Record No. 230879                    JUSTICE STEPHEN R. McCULLOUGH
                                                  January 2, 2025

VASILIA C. ROGAKOS-RUSSELL,
ADMINISTRATOR OF THE ESTATE OF
CONSTANTINE P. ROGAKOS, DECEASED


FROM THE COURT OF APPEALS OF VIRGINIA


Bon Secours-DePaul Medical Center ("Bon Secours" or "the Hospital") appeals from a

judgment of the Court of Appeals which affirmed a verdict for the Plaintiff in a medical

malpractice case. Bon Secours argues that the Court of Appeals committed reversible error (1)

in its interpretation of the Dead Man's Statute; (2) in upholding the circuit court's refusal to grant

a jury instruction that addressed multiple causes; (3) in affirming the circuit court's refusal to

permit Bon Secours to employ a hospital stretcher as a demonstrative exhibit at trial, and (4) in

denying the Hospital's motion to strike. For the reasons that follow, we affirm the judgment of

the Court of Appeals.

## BACKGROUND

I. A ROUTINE HOSPITAL VISIT TURNS TRAGIC.

Father Constantine P. Rogakos, a retired Greek-Orthodox priest, checked in at Bon

Secours hospital for an outpatient abdominal ultrasound. His doctor had ordered the test to help

him diagnose Father Rogakos' bloating and abdominal pain. Father Rogakos was eighty-six

years old. He walked with a "quad" cane. His wife described him as having a "shuffled gait."

Father Rogakos had been using a cane for approximately one year before the hospital visit. He

did not use it at home, because he could hold on to furniture. He could dress himself, but he

would sit in a large chair when doing so. He drove himself to his office at the church every day to hold office hours and help the church. However, he could not serve mass unassisted. He had fallen on two occasions, once at home when he tripped on a rug, and once at church when he tripped on a stair.

When Father Rogakos arrived at the hospital reception desk, hospital personnel provided him with a wheelchair to help him reach the waiting room. When the time came to go to the ultrasound room, his wife asked if she should go with her husband. The sonographer, Joanna Regan said "no", and assured his wife that she would be with him.

Regan accompanied Father Rogakos to a small room for the ultrasound to be taken. Photographs show an ordinary wheeled hospital stretcher on one side of the room. There was no chair for him to sit on. He walked to the room with his cane. He was dressed in multiple layers of clothing. Regan informed Father Rogakos that he should "remove [his] clothing from the waist up" and put on a medical gown that was laid out for him on a wheeled hospital stretcher. Regan did not recall whether she checked to see if the wheels on the stretcher were locked. Regan left the room while Father Rogakos changed.

Regan checked on him a few minutes later and asked if he was ready. He replied "no." Just a few moments later, Regan heard "what sounded like a fall." She rushed into the room and found Father Rogakos in his undershirt, on the floor, essentially perpendicular to the bed, with his feet towards the bed and his pants unfastened.

Mrs. Rogakos was informed of her husband's fall, and she went into the ultrasound room. She found him lying face down on the floor. He mumbled something in Greek, which Mrs. Rogakos translated as "what happened?"

2

Hospital personnel rushed Father Rogakos to the emergency room and later to the intensive care unit. He suffered a laceration on his head, a right periorbital hematoma, and an intracranial hemorrhage.

After his fall, Father Rogakos made statements to five different persons describing the circumstances of his fall. He stated that he leaned on the wheeled hospital stretcher while he was changing, the stretcher moved, and he lost his balance and fell. He made this statement to his wife;[1] his two daughters;[2] a fellow priest, Father George Bessinas;[3] and his treating physician, Dr. Nabil Tadros.[4]

Despite efforts by the Hospital to save him, his condition continued to deteriorate. After ten days, his family decided to withdraw life support, and he passed away.

II. THE JURY FINDS FOR THE PLAINTIFF IN THE ENSUING MEDICAL MALPRACTICE TRIAL.

Vasilia Rogakos-Russell, the Administrator of the Estate of Constantine P. Rogakos ("the Plaintiff"), filed a wrongful death and survivorship action against the Hospital alleging that Regan negligently failed to monitor and assist Father Rogakos while he changed and failed to ensure that the wheels on the ultrasound stretcher were locked.

---

[1] "He said to me I went close to the bed and took my clothes off. And I went and put my right arm on the bed to support myself . . . and the bed moved and I fell down and I hit myself."

[2] "He told me that he leaned on the ultrasound bed and that the bed moved and that he lost his balance and he fell."

[3] "He told me that he came for a simple test, ultrasound test, and while he was in the room by himself changing, he supported himself on the ultrasound bed which gave way, and he fell and injured his head."

[4] "He reported that this [stretcher] was unlocked and when he leaned over to change his clothes, it moved and he lost his balance, fell, etc."

3

A.  Use of a stretcher as a demonstrative exhibit

During the final pretrial conference, counsel for the Plaintiff objected to the Hospital using certain photographs at trial, noting that the stretcher depicted in the photographs was different from the one that was implicated in Father Rogakos' fall.  Defense counsel responded that he would use the photographs of a hospital stretcher "[a]s a demonstrative exhibit," and that he would "bring a bed in, and then we can identify it, and that will solve all this photograph problem."  Following the hearing, defense counsel emailed the court stating that the stretcher would be "a demonstrative [exhibit] at trial" and sought guidance on how to obtain the approval from the sheriff to bring it into the courtroom.  The circuit court asked counsel if it was "the same bed in question?"  Defense counsel responded that "it is not 'the same bed'" but that it is "the same make and model as was present at" the Hospital and offered to present a witness who would testify that it was the same make and model.  The Court subsequently issued an order prohibiting the Hospital from introducing the stretcher at trial as a demonstrative exhibit because "the prejudicial effect of the proffered hospital bed substantially outweighs any probative value . . . [and] there is a high likelihood that the hospital bed may mislead the jury . . . because the proffered bed is not the bed that the decedent leaned against."

B.  The parties stipulate that the brain injury was a result of the fall.

Prior to trial, the parties reached the following stipulation: that Father Rogakos "fell and struck his head while alone in the ultrasound room;" that "[a]s a result of the fall, [Father Rogakos] suffered a right periorbital hematoma and brain injury;" and that Father Rogakos "did not recover from the injuries he suffered from the fall."

4

C. The Plaintiff's evidence includes Father Rogakos's statements about the circumstances of his fall.

At trial, the Plaintiff offered testimony from Mrs. Rogakos about the hospital visit, Father Rogakos' need to walk with a cane, and the statements he made to his family and others about how he fell when the stretcher moved. The Hospital objected to the introduction of Father Rogakos's statements about the stretcher moving, arguing that the Dead Man's Statute required these statements to be corroborated. The circuit court overruled the Hospital's objections.

D. Experts offered conflicting evidence concerning the standard of care.

Two experts testified for the Plaintiff concerning the standard of care. They opined that the standard of care required Hospital personnel to assess Father Rogakos for the risk that he might fall, and they should have determined that he presented such a risk. Moreover, according to the Plaintiff's experts, the Hospital should have offered him a wheelchair, and Hospital personnel should have stayed in the room with him to provide him with assistance. For example, they could have helped him undress and climb onto the stretcher.

Regan, the hospital sonographer, testified that Father Rogakos did not appear to have any difficulty walking with his cane. The Hospital's standard of care experts testified that the Hospital complied with the standard of care in leaving Father Rogakos alone in the room to change. They noted that Father Rogakos seemed to have no difficulty standing or walking and did not appear to need help changing into the hospital gown. They observed that patients need privacy when they are changing.

Countering Father Rogakos' statements that the stretcher was improperly secured, a witness for the Hospital testified that the wheels were locked when she checked the stretcher in the ultrasound room at 6:30 a.m. In addition, the Hospital presented evidence that there were only inpatients that morning in the ultrasound room that was used for Father Rogakos'

5

ultrasound, and therefore the stretcher did not need to be moved to accommodate a different bed. An employee also testified that she unlocked the wheels on the stretcher to move it so Father Rogakos could be taken to the emergency room. One of the Hospital's experts testified about the operation of the locking mechanism and the fact that Regan would have noticed if the wheels were not locked. Finally, an expert for the Hospital testified that the stretcher can move or shift position even when the wheels are locked.

E. The circuit court refuses to grant a jury instruction covering multiple causes.

Defense counsel requested the following jury instruction, jury Instruction Number 22:

> If you believe from the evidence that the death of Constantine P. Rogakos might have resulted from either of two causes, for one of which the Defendants might have been responsible and for the other of which the Defendants were not responsible, and if you are unable to determine which of the two causes occasioned Constantine P. Rogakos's fall, then the plaintiff cannot recover.

The circuit court refused the instruction, stating that Bon Secours "failed to prove that the proffered jury instruction was a correct statement of law . . . [and] the instruction was not supported by the evidence in this case as no evidence was introduced as to an alternate cause of the decedent's death."

F. The jury finds for the Plaintiff.

The circuit court denied the Hospital's motion to strike. The jury returned a verdict in favor of the Plaintiff for $2,000,000. The circuit court denied post-trial motions and upheld the jury's verdict.

III. THE COURT OF APPEALS AFFIRMS THE JURY'S VERDICT.

On appeal to the Court of Appeals, that court affirmed in an unpublished opinion. *Bon Secours-DePaul Medical Ctr., Inc. v. Rogakos-Russell*, Record No. 1134-22-1, 2023 Va. App. Lexis 738 (Va. Ct. App. Oct. 31, 2023). The Court of Appeals held that the Dead Man's statute

6

did not preclude the Plaintiff from introducing Father Rogakos's statements into evidence. It

upheld the circuit court's refusal to grant the multiple causes instruction, reasoning that the issue

was fully covered by other instructions. The Court of Appeals also affirmed the circuit court's

ruling concerning the use of a stretcher as a demonstrative exhibit on the basis that the circuit

court has broad discretion in such matters and that its discretion was not abused. Finally, the

Court of Appeals upheld the circuit court's denial of the Hospital's motion to strike. We granted

the Hospital an appeal from this decision.

## ANALYSIS

I. THE COURT OF APPEALS CORRECTLY UPHELD THE INTRODUCTION OF FATHER ROGAKOS'
STATEMENTS UNDER THE DEAD MAN'S STATUTE.

Bon Secours contends that, under the Dead Man's Statute, the judgment could not be

founded upon the uncorroborated statement Father Rogakos made to several witnesses about the

circumstances of his fall, *i.e.* that the stretcher moved when he put some weight on it.

In *Shumate v. Mitchell*, 296 Va. 532, 541-44 (2018), we unpacked the historic backdrop

that led to the adoption of this statute. In brief, under the common law, every witness who was

interested in a case was disqualified from testifying. *Id.* at 541. Dissatisfaction with this harsh

rule of exclusion prompted legislatures to enact remedial statutes that became known as Dead

Man's Statutes. The idea was to replace the common law rule of total exclusion with a

requirement that testimony from adverse or interested witnesses must be corroborated. *Diehl v.*

*Butts*, 255 Va. 482, 488 (1998).

In relevant part, the statute provides as follows:

> In an action by or against a person who, from any cause, is
> incapable of testifying, or by or against the committee, trustee,
> executor, administrator, heir, or other representative of the person
> so incapable of testifying, no judgment or decree shall be rendered
> in favor of an adverse or interested party founded on his

7

uncorroborated testimony. In any such action, whether such adverse party testifies or not, all entries, memoranda, and declarations by the party so incapable of testifying made while he was capable, relevant to the matter in issue, may be received as evidence in all proceedings including without limitation those to which a person under a disability is a party. . . .

Code § 8.01-397. The same text is found in Virginia Rule of Evidence 2:804(b)(5).

We review a lower court's interpretation of a statute de novo. *Davis v. MKR Dev., L.L.C.*, 295 Va. 488, 492 (2018).

As we noted in *Shumate*, there are two basic components to the statute. 296 Va. at 546. The first is a requirement that testimony from an "interested" or "adverse" witness must be corroborated before judgment can be entered for an interested or adverse party. *Shumate*, 296 Va. at 546-47. "[T]estimony is subject to the corroboration requirement if it is offered by an adverse or interested party and if it presents an essential element that, if not corroborated, would be fatal to the adverse party's case." *Johnson v. Raviotta*, 264 Va. 27, 32 (2002). If the witness is neither "adverse" nor "interested," the corroboration requirement does not apply. *Shumate*, 296 Va. at 547; *see also Epes v. Hardaway*, 135 Va. 80, 92-93 (1923). Second, the statute contains a sweeping rule that broadly permits the introduction of hearsay testimony on behalf of the deceased or disabled party. *Shumate*, 296 Va. at 544-45, 546.

While the Hospital invokes the Dead Man's Statute, the Plaintiff and its amicus, the Virginia Trial Lawyers' Association, counter by arguing that the Dead Man's Statute does not apply at all in this circumstance. They contend that this statute is designed to address a situation where the *survivor* offers testimony which the other side cannot refute due to death or disability. According to the Plaintiff and amicus, the rationale behind the Dead Man's Statute is inapplicable when statements of the deceased or disabled party are offered into evidence *against* the surviving party.

8

Here, we need not decide whether the Dead Man's Statute applies when the statements being offered emanate from the deceased or disabled person, as opposed to the survivor. "[T]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" *Rastek Constr. & Dev. Corp. v. Gen. Land Commercial Real Estate Co.*, 294 Va. 416, 423 (2017) (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017)). We will assume, without deciding, that the statements of Father Rogakos that were offered through his wife and daughters required corroboration and that a judgment in their favor could not be founded upon their testimony absent corroboration. In this case, however, the statements from Father Rogakos about the movement of the stretcher did not require corroboration when relayed by Father Bessinas and Dr. Tadros and, because Father Bessinas and Dr. Tadros were not adverse or interested parties or witnesses, the judgment could be founded upon their testimony.

Father Bessinas and Dr. Tadros are not adverse or interested parties. "An adverse party, within the meaning of [the Dead Man's Statute], is one who is a party to the record, against whom or in whose favor a judgment is sought. An interested party is one, not a party to the record, who is pecuniarily interested in the result of the suit." *Merchants Supply Co. v. Hughes*, 139 Va. 212, 216 (1924). Father Bessinas and Dr. Tadros do not fit these definitions. Therefore, Father Rogakos' statements about the stretcher moving as relayed by Father Bessinas' and Dr. Tadros' testimony did not require corroboration. *See Shumate*, 296 Va. at 541.

From this conclusion — that because Dr. Tadros and Father Bessinas were not interested parties, their statements did not require corroboration to be admitted — it follows that, in the words of the Dead Man's Statute, the judgment was not "founded" on the "uncorroborated testimony" of "an adverse or interested party." Code § 8.01-397. To be "founded on" is "[h]aving as a basis." BLACK'S LAW DICTIONARY 799 (11th ed. 2019); *see also* Webster's Third

9

New International Dictionary 898 (2002) (a foundation is "the basis on which something is founded: the basis upon which something stands or is supported"). In *Johnson v. Raviotta*, we described this aspect of the Dead Man's Statute as "an essential element that, if not corroborated, would be fatal to the adverse party's case." 264 Va. at 32. In this case, the near identical statements conveyed by Father Rogakos' wife and daughters (who we assume for purposes of this opinion were adverse or interested parties subject to the Dead Man's Statute) were merely cumulative of statements conveyed through Father Bessinas and Dr. Tadros, which did not require corroboration.

The Hospital further argues that Father Rogakos himself, although deceased, is actually an interested party and, therefore, his statements required corroboration. In support of this assertion, the Hospital claims that because the complaint was for wrongful death, the cause of action "belongs" to the decedent, which makes him an adverse or interested party. The Hospital maintains that the administrator is merely bringing the action that belonged to the decedent. We disagree. First, by statute, the wrongful death action is brought by, and any judgment would be in favor of, his personal representative, not Father Rogakos. *See* Code § 8.01-50(C); *see also Merchants Supply Co.,* 139 Va. at 216 ("An adverse party, within the meaning of [the Dead Man's Statute], is one who is a party to the record, against whom or in whose favor a judgment is sought."). Second, Father Rogakos is not a witness, he is a hearsay declarant. In fact, the statute describes the person who is disabled or deceased as being "incapable of testifying." Code § 8.01-397. Father Rogakos provided no testimony that needs to be corroborated. Third, he is not an "interested" person because, having passed away, the judgment would not benefit him personally. "We have frequently held that an action for wrongful death is not for the benefit of

10

the decedent's estate, but for certain near relatives." *Conrad v. Thompson*, 195 Va. 714, 721

(1954). The United States Court of Appeals for the Fourth Circuit put it this way:

> The wrongful death statutes of Virginia authorize compensation not for the economic and other loss suffered by the injured person, but for that of the statutory beneficiaries by reason of the death. Any recovery is an asset in the hands of the statutory beneficiaries, not of the general estate of the decedent, and, by express statutory provision, damages recovered are beyond the reach of the decedent's creditors.

*Grady v. Irvine*, 254 F.2d 224, 228 (4th Cir. 1958). In short, we conclude that, in this instance,

Father Rogakos is not an interested party whose statements required corroboration.

The first component of the Dead Man's Statute – that testimony given by an interested

party must be corroborated – is satisfied because the statements of Father Rogakos were

conveyed by persons who were not interested parties. The second sentence of the statute broadly

allows these statements to come in, and, indeed, the Hospital does not contest their admissibility.

*Shumate*, 296 Va. at 544-45, 548. Consequently, we affirm the Court of Appeals' holding that

the Dead Man's Statute did not preclude the Plaintiff from adducing into evidence the statements

Father Rogakos made and, moreover, the Dead Man's Statute did not preclude the trial court

from entering judgment in favor of the Plaintiff.[5]

---

[5] The Hospital intimates that admitting Father Rogakos' statements here raises due process concerns. The Hospital did not raise this point below and it is not the subject of an assignment of error. Consequently, we decline to address the issue. *See* Rules 5:25 and 5:17(c)(1). Two additional points may be worth noting, however. First, we previously rejected an argument that the Dead Man's Statute "violates traditional notions of due process." *Diehl*, 255 Va. at 488, n.2. Additionally, states have wide latitude in fashioning rules of evidence. *See Bassett v. Smith*, 464 F.2d 347, 351 (5th Cir. 1972) ([t]he due process clause . . . "permit[s] the states wide latitude in fashioning rules of evidence and procedure."); *Atwell v. Arkansas*, 426 F.2d 912, 915 (8th Cir. 1970) (citations omitted) ("The question of admissibility of evidence usually is a matter of state law and procedure and does not involve federal constitutional issues."). *See also Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983) ("[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules.").

II. THE CIRCUIT COURT DID NOT ERR IN DECLINING TO GRANT THE MULTIPLE CAUSES JURY INSTRUCTION.

The Hospital tendered a jury instruction to address the role of the jury when there are multiple causes present. The Court of Appeals affirmed the trial court's refusal to grant the instruction, reasoning that the instruction was superfluous. We affirm the holding of the Court of Appeals, but on different reasoning.

The multiple causation instruction in this case provided that:

> If you believe from the evidence that the death of Constantine P. Rogakos might have resulted from either of two causes, for one of which the Defendants might have been responsible and for the other of which the Defendants were not responsible, and if you are unable to determine which of the two causes occasioned Constantine P. Rogakos's fall, then the plaintiff cannot recover.[6]

The opening sentence of the proposed jury instruction provided that "[i]f you believe from the evidence that *the death* of Constantine P. Rogakos might have resulted from either of two causes . . . ." (emphasis added). The gravamen of the parties' stipulation, however, was that the death was caused by the fall. Father Rogakos' death was not the result from two possible causes, it resulted from the fall. The parties disputed the cause of the fall, not the cause of death. The instruction went on to provide that "if you are unable to determine which of the two causes

---

[6] The instruction is similar but differs in one significant respect from the one we reviewed and approved in *Emergency Physicians of Tidewater, PLC v. Hanger*, 303 Va. 77, 85 (2024). In *Hanger*, the multiple causation instruction provided:

> There may be more than one proximate cause of an injury. If the negligence of a defendant proximately caused injury to Patricia Hanger, then the negligence of that defendant is a proximate cause of Patricia Hanger's injury even if there were other acts or omissions that caused her injuries.

303 Va. at 85.

12

occasioned Constantine P. Rogakos's *fall*, then the plaintiff cannot recover." Thus, the instruction contained an internal inconsistency and, by intermingling the stipulated cause of death, which was not at issue, and the cause of the fall, which was very much at issue, the instruction could serve as a source of potential confusion. At oral argument, counsel, while defending the instruction as a correct statement of the law, acknowledged that the instruction "may not be a correct statement as pertains to that case."

Counsel further noted that had the circuit court pointed out this flaw or had opposing counsel made an objection to this instruction pointing out the specific problem of the instruction – mixing the *consequence* from the fall, death, with *the cause* of the fall – counsel could have remedied the problem at trial. Although a circuit court certainly can engage with counsel to fix a defective jury instruction, there is no requirement that the court do so. "In a civil trial, the burden is on the parties to furnish the trial court with proper and appropriate instructions that address their respective theories of the case." *Honsinger v. Egan*, 266 Va. 269, 275 (2003). In a situation where "a proffered instruction is not a correct statement of the law or is not supported by the evidence in the case, the trial court is not required to correct or amend the instruction rather than refusing to grant it." *Id.*[7]

---

[7] The circuit court declined to grant the instruction on the basis that it was an incorrect statement of the law. It did not elaborate further. It is not clear whether the circuit court meant by this that all such instructions are incorrect (which would be contrary to our recent holding in *Hanger*, 303 Va. 77), or whether instead the court concluded that this specific instruction was flawed. "We have many times pointed out that on appeal the judgment of the lower court is presumed to be correct and the burden is on the appellant to present to us a sufficient record from which we can determine whether the lower court has erred in the respect complained of." *Justis v. Young*, 202 Va. 631, 632 (1961).

III.  THE COURT OF APPEALS DID NOT ERR IN UPHOLDING THE CIRCUIT COURT'S DECISION TO EXCLUDE A MEDICAL STRETCHER AS A DEMONSTRATIVE EXHIBIT.

The circuit court ruled that the Hospital could not use a stretcher at trial as a demonstrative exhibit, reasoning that the prejudicial effect outweighed its probative value, that the use of the bed, which was not the one implicated in this incident, presented a high likelihood that the jury would be misled as to the ability to lock the wheels and to ensure that they were locked, and, finally, that the Hospital could make use of photographs of the bed.  The Court of Appeals upheld the circuit court's decision as a proper exercise of its discretion.  Bon Secours challenges this decision, arguing that it should have been permitted to employ an actual stretcher before the jury.

"Admission of items of demonstrative evidence to illustrate testimonial evidence is . . . a matter within the sound discretion of a trial court." *Jackson v. Commonwealth*, 267 Va. 178, 203 (2004) (alteration in original) (quoting *Mackall v. Commonwealth*, 236 Va. 240, 254 (1988)).  As the circuit court observed, the Hospital could make use of photographs to inform the jury about the operation of the bed.  In fact, the Hospital used photographs and testimony to present detailed evidence about the how the stretcher functioned.  Moreover, the circuit court could sensibly be leery of the risk that the use of a different bed could mislead the jury.  Recognizing that trial judges possess considerable latitude in such matters, we do not perceive any abuse of discretion by the circuit court in declining to allow the Hospital to use the substitute stretcher as a demonstrative exhibit.  The Court of Appeals did not err in affirming the circuit court.

IV.  THE CIRCUIT COURT DID NOT ERR IN DENYING THE HOSPITAL'S MOTION TO STRIKE.

In its final assignment of error, the Hospital argues that the Court of Appeals erred in affirming the trial court's denial of its motion to strike and its motion to set aside the verdict.

14

The Hospital argues that the Plaintiff did not establish proximate cause. On this question we have no difficulty affirming the judgment of the Court of Appeals.

"It is well-settled that a party who comes before us with a jury verdict approved by the circuit court occupies the most favored position known to the law." *Northern Va. Kitchen, Bath & Basement, Inc. v. Ellis*, 299 Va. 615, 622 (2021) (citation and internal quotation marks omitted). This Court will set aside a trial court's judgment sustaining a jury verdict only where it is "plainly wrong or without evidence to support it." *Parson v. Miller*, 296 Va. 509, 524 (2018) (quoting Code § 8.01-680). On appeal, this Court affords the Plaintiff, as the recipient of the jury verdict, the benefit of all substantial conflicts in the evidence, as well as all reasonable inferences that may be drawn from the evidence. *See Estate of Moses v. Southwest Virginia Transit Mgmt. Co.*, 273 Va. 672, 677 (2007) (noting that "a judge may not substitute his or her conclusion for that of the jury merely because he or she would have reached a different result").

"Ordinarily, the issue of proximate cause is a question of fact for resolution by a jury. It becomes a question of law for decision by a court only when reasonable minds cannot differ about the result." *Moses*, 273 Va. at 679 (quoting *Litchford v. Hancock*, 232 Va. 496, 499 (1987)). Here, the jury could have credited the statements of Father Rogakos that the bed shifted, causing him to fall. In addition, the Plaintiff offered testimony that the Hospital did not comply with the standard of care in failing to appreciate the risk of the fall of an 86-year-old man who walked with shuffled gait and a quad cane, and, furthermore, the Hospital should have had someone in the room to help him and to avert a fall. Taking off a shirt requires the use of both hands. When a person who is unsteady on his feet must release his grip on his cane to take off the shirt, a jury can sensibly infer that there is a heightened danger of a fall, and that that is what most likely occurred to Father Rogakos. "We have repeatedly held that the factfinder may draw

15

reasonable inferences from proven facts." *Rich v. Commonwealth*, 292 Va. 791, 800 (2016). The jury could properly conclude on this evidence that Father Rogakos' fall would not have occurred absent the Hospital's negligence – in failing to properly assess the risk of a fall, in failing to help him in the ultrasound room, and possibly in failing to secure the stretcher. The facts and reasonable inferences from the facts supported a finding of proximate cause.

## CONCLUSION

The judgment of the Court of Appeals is affirmed.

*Affirmed.*