COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Beales and Athey
Argued at Richmond, Virginia


JASON ALEXANDER WALLACE

MEMORANDUM OPINION[*] BY
v.        Record No. 1403-24-2        CHIEF JUDGE MARLA GRAFF DECKER
NOVEMBER 12, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRICO COUNTY
John Marshall, Judge

Gregory R. Sheldon (BainSheldon, PLC, on brief), for appellant.

David A. Stock, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Jason Alexander Wallace appeals his conviction for involuntary manslaughter in

violation of Code § 18.2-36.1(A). He argues that the Commonwealth failed to prove either that

he was under the influence at the time of the hit-and-run or, alternatively, that any impairment

was the proximate cause of the pedestrian's death.[1] For the following reasons, we affirm the

conviction.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Based on guilty pleas, the court also convicted Wallace of two additional offenses—
possession of a Schedule I or II controlled substance and felony hit-and-run in violation of Code
§§ 18.2-250 and 46.2-894. He does not challenge those convictions on appeal.

BACKGROUND[2]

Around 10:30 p.m. on October 29, 2022, Wallace's SUV struck and killed Thaddeus Lee Smith as Smith attempted to cross the street. Rather than stopping, Wallace drove home.

Even so, police officers quickly developed him as a suspect. About ninety minutes after the collision, Officer Craig Jones of the Henrico County Division of Police arrived at Wallace's residence. Officer Jones noticed that Wallace smelled "moderate[ly]" of alcohol. Wallace told the officer he had been drinking tequila at a friend's house earlier that evening. When asked about the accident, Wallace said he was proceeding through an intersection when he saw two men walking across the road. He maintained the individuals "had cleared in front of his vehicle, but one of them turned around and walked back in front of him. And he struck . . . that gentleman."

Officer Jones administered three standardized field-sobriety tests: the horizontal gaze nystagmus test, the walk-and-turn test, and the one-legged stand test. Wallace had some difficulty with each of the three tests. Officer Jones then administered a preliminary breath test and arrested Wallace at about 1:25 a.m.

Wallace was transported to a hospital for a blood draw. He continued to smell of alcohol, and Officer T.W. Holmes of the Henrico Police observed that Wallace's coordination was "poor." Holmes also noticed redness and residue in Wallace's right nostril. Wallace told Officer Holmes that he "took three to five . . . bumps" of cocaine, "smoked half a blunt of marijuana," and "drank four shots of tequila" between 6:00 and 9:00 p.m., before the 10:30 p.m. incident. At

---

[2] When reviewing the sufficiency of the evidence, this Court recites "the facts in the light most favorable to the Commonwealth, the party that prevailed at trial." *Evans v. Commonwealth*, 82 Va. App. 612, 619 (2024). In doing so, we discard any evidence that conflicts with the Commonwealth's evidence and "regard as true all the credible evidence favorable to the Commonwealth" and all inferences that can be fairly drawn from that evidence. *Id.* at 620 (quoting *Camann v. Commonwealth*, 79 Va. App. 427, 431 (2024) (en banc)).

the hospital, the officer conducted a drug-influence evaluation. Officer Holmes concluded that Wallace's overall performance on the evaluation was consistent with alcohol and drug impairment.

The Commonwealth charged Wallace with involuntary manslaughter, possession of a controlled substance, and felony hit-and-run. He pleaded not guilty to involuntary manslaughter and guilty to the other two charges.

At Wallace's bench trial for involuntary manslaughter, the Commonwealth presented testimony from the investigating officers as well as from Patience Sheive and Robert Gilliam, two eyewitnesses to the incident. Sheive and Gilliam gave consistent accounts of how the fatality occurred. According to their testimony, as two men started to cross the street at a crosswalk, a dark SUV came quickly toward them. One of the men moved back, but the other did not and was struck by the SUV. Neither Sheive nor Gilliam saw the SUV brake or make evasive maneuvers before striking the victim. After impact, the SUV did not stop and continued in its direction of travel.

Dr. Jane Thatcher, a toxicologist at the Department of Forensic Science, testified that she examined Wallace's blood sample. Drawn at 2:55 a.m., Wallace's blood contained a blood alcohol concentration (BAC) of 0.054, a cocaine concentration of 0.011 milligram per liter, a benzoylecgonine concentration of 0.13 milligram per liter, a tetrahydrocannabinol (THC) concentration of 0.0010 milligram per liter, and a THC carboxylic acid concentration of 0.010 milligram per liter.[3]

Thatcher explained retrograde extrapolation, a calculation used to estimate a person's BAC at an earlier time, assuming the person's body has absorbed all the alcohol ingested and is purely eliminating it. Applying retrograde extrapolation to the blood evidence in Wallace's case,

---

[3] Benzoylecgonine is "an inactive metabolite of cocaine."

Dr. Thatcher opined that Wallace's BAC was likely 0.09 percent to 0.13 percent by weight by volume when he struck the victim with his vehicle.

According to Dr. Thatcher, alcohol affects many of a body's processes related to driving, including vision, motor skills, ability to divide attention, reaction times, and judgment. She testified that effects of alcohol begin when a person's BAC is about 0.05. She noted that cocaine can increase risk-taking behaviors, negatively affect the quality of decision-making, and impair vision and ability to focus. Dr. Thatcher explained that THC affects balance, coordination, executive function, planning, perceptions of time and space, reaction times, and motor skills. She added that the combination of alcohol, cocaine, and THC can increase the effects of each substance.

After the Commonwealth rested, defense counsel argued the evidence did not prove the charge of involuntary manslaughter. He contended that the Commonwealth failed to establish that Wallace was under the influence when the accident occurred or that the death resulted from his being under the influence of alcohol or drugs. The trial court denied the motion, and Wallace presented no evidence.

The trial court convicted Wallace of involuntary manslaughter. The court commented that it could only "put but so much weight on" the officer testimony about the field-sobriety and drug-impairment tests because of how much time had elapsed between the collision and when those tests were administered. It stated that the more persuasive evidence came from Dr. Thatcher's testimony and from Wallace's own statements to the officers about his alcohol and drug use less than two hours before the deadly hit-and-run. The court found that Wallace was intoxicated at the time of the accident and that his intoxication was the proximate cause of Smith's death. It emphasized that despite seeing Smith in the road, Wallace did not brake,

- 4 -

swerve, or stop. Wallace was sentenced to ten years of incarceration for the involuntary manslaughter conviction, with eight years suspended.

ANALYSIS

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "[T]he judgment of the trial court is presumed correct," and a reviewing court does not "disturb[]" that judgment "unless it is plainly wrong or without evidence to support it." *Evans v. Commonwealth*, 82 Va. App. 612, 626 (2024) (quoting *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020)). "[I]t is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion." *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (second and third alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

In light of this standard of review, "[t]he only relevant question" for this Court "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

Several other fundamental principles apply in a sufficiency review. It is the function of the trier of fact to determine the credibility of witnesses and the weight afforded the testimony of those witnesses. *Washington v. Commonwealth*, 75 Va. App. 606, 615-16 (2022). And the appellate court "does not distinguish between direct and circumstantial evidence, as the fact finder . . . 'is entitled to consider all of the evidence, without distinction, in reaching its determination.'"

*Commonwealth v. Moseley*, 293 Va. 455, 463 (2017) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003)). "Circumstantial evidence is not viewed in isolation." *Hooper v. Commonwealth*, 78 Va. App. 508, 516 (2023) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)). "[T]he combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable" fact finder to conclude beyond a reasonable doubt that a defendant is guilty. *Id.* (quoting *Muhammad*, 269 Va. at 479).

Wallace challenges his conviction for involuntary manslaughter based on two premises relating to the sufficiency of the evidence. He contends that the Commonwealth failed to prove that he was under the influence of alcohol or drugs when he struck Smith and that any such impairment was the proximate cause of the fatal accident. We address these arguments in turn.

## I. Under the Influence

"Any person who, as a result of driving under the influence in violation of clause (ii), (iii), or (iv) of § 18.2-266 . . . unintentionally causes the death of another person, shall be guilty of involuntary manslaughter." Code § 18.2-36.1(A). Under Code § 18.2-266, it is unlawful

> to drive or operate any motor vehicle . . . (ii) while such person is under the influence of alcohol, (iii) while such person is under the influence of any narcotic drug or any other self-administered intoxicant or drug of whatsoever nature, or any combination of such drugs, to a degree which impairs his ability to drive or operate any motor vehicle . . . safely, [or] (iv) while such person is under the combined influence of alcohol and any drug or drugs to a degree which impairs his ability to drive or operate any motor vehicle . . . safely . . . .

As defined here, a person is under the influence of alcohol or drugs when he has ingested enough of the substance "to observably affect his manner, disposition, speech, muscular movement, general appearance or behavior." *See Leake v. Commonwealth*, 27 Va. App. 101, 110 (1998) (applying the Code § 4.1-100 definition of intoxication to Code § 18.2-266).

- 6 -

"In determining whether a defendant was under the influence, a factfinder considers 'all of the evidence of his condition at the time of the alleged offense.'" *Hogle v. Commonwealth*, 75 Va. App. 743, 754 (2022) (quoting *Leake*, 27 Va. App. at 109). As applicable here, under Code § 18.2-269(A)(2), if a blood test reflects an

> excess of 0.05 percent but less than 0.08 percent by weight by volume of alcohol in the accused's blood . . . , such facts shall not give rise to any presumption that the accused was or was not under the influence of alcohol intoxicants at the time of the alleged offense, but such facts may be considered with other competent evidence in determining the guilt or innocence of the accused . . . .

It is against this legal backdrop that we consider Wallace's argument.

Wallace contends that the trial court erred in finding that he was under the influence at the time of the hit-and-run. He argues that the trial court, as trier of fact, erroneously "rel[ied] upon the permissive inference of" Code § 18.2-266(i) in finding that he operated a vehicle under the influence. He suggests that the trial court made a finding "based solely" "upon the fact that . . . [his] blood alcohol concentration was estimated to be at least a .09 at the time of the accident."

Code § 18.2-266(i) makes it "unlawful for any person to drive or operate any motor vehicle . . . while such person has a blood alcohol concentration of 0.08 percent or more by weight by volume." "[T]he Commonwealth cannot rely on the presumption in Code § 18.2-266(i) to convict a defendant[]" "[u]nder Code § 18.2-36.1" "but instead must prove he was under the influence as proscribed in subsection[] (ii), (iii), [or] (iv)." *Dalo v. Commonwealth*, 37 Va. App. 156, 168 (2001).

Contrary to Wallace's argument, the record does not reflect that the trial court found that Wallace was under the influence based solely on his estimated BAC at the time of the offense. The court gave significant weight to Wallace's statements to the officers concerning his consumption of alcohol and drugs before the hit-and-run. Wallace admitted to consuming four

shots of tequila, three to five "bumps" of cocaine, and half a marijuana "blunt" less than two hours before the accident. And both officers detected an odor of alcohol on Wallace and observed signs of impairment during the field-sobriety and drug-impairment tests.[4]

In addition, Wallace's BAC registered 0.054 at 2:55 a.m. While his BAC "did not give rise to a presumption that he was under the influence of alcohol, the trial court was entitled to consider the BAC along with other competent evidence." *See Hogle*, 75 Va. App. at 754. Dr. Thatcher testified that the adverse physical effects from alcohol start at around a 0.05 BAC and can impair vision, motor skills, ability to divide attention, reaction times, and judgment. Notably, Wallace's blood also contained cocaine and THC. Dr. Thatcher opined that cocaine causes increased risk-taking behaviors, affects the quality of decision-making, and compromises vision. She added that THC affects balance, coordination, perception, and reaction times. Dr. Thatcher explained that the combination of alcohol, cocaine, and THC could increase their effects.

This evidence, viewed in its totality, supports the trial court's finding that Wallace was operating his vehicle while under the influence of a combination of alcohol and drugs at the time of the hit-and-run.

---

[4] Wallace suggests that the trial court's comment that it could not "put but so much weight on" the officers' testimony demonstrates that it disregarded the evidence of his performance on the field sobriety and drug impairment tests because they were too remote in time from the collision. The record does not evince, and we will not presume, that the trial court disregarded the officers' testimony. *See Suffolk City Sch. Bd. v. Wahlstrom*, 302 Va. 188, 218 (2023) (cautioning against isolating statements of a trial judge and taking them out of context); *Cellucci v. Commonwealth*, 77 Va. App. 36, 51 (2023) (en banc) (same). Rather, the record supports the inference that the trial court simply assigned the officers' testimony less weight than other evidence. *See Edwards v. Commonwealth*, 68 Va. App. 284, 301-02 (2017) (noting that the weight of the "given evidence is a matter for the [factfinder] to decide" (alteration in original) (quoting *Haskins v. Commonwealth*, 44 Va. App. 1, 9 (2004))).

## II. Causation

"In a prosecution brought under Code § 18.2-36.1, the Commonwealth is required to prove 'a causal connection between the driver's intoxication and the death of another person.'" *Hall v. Commonwealth*, 32 Va. App. 616, 632 (2000) (en banc) (quoting *Pollard v. Commonwealth*, 20 Va. App. 94, 99 (1995)). "[C]riminal liability can attach to each actor whose conduct is a proximate cause unless the causal chain is broken by a superseding act that becomes the sole cause of the [event]." *Evans*, 82 Va. App. at 628 (second alteration in original) (quoting *Rich v. Commonwealth*, 292 Va. 791, 800 (2016)). "A proximate cause is 'an act or omission that, in natural and continuous sequence unbroken by a superseding cause, produces a particular event and without which that event would not have occurred.'" *Rich*, 292 Va. at 800 (quoting *Brown v. Commonwealth*, 278 Va. 523, 529 (2009)). "Generally, causation is an issue for the [factfinder] to decide." *Hall*, 32 Va. App. at 632. Here, that was the trial court.

Wallace argues that the trial court erred by finding that his intoxication was the proximate cause of Smith's death. He asserts the evidence showed that Smith "stepped out in front of his vehicle immediately prior to being struck" and Wallace "had no time to stop." He suggests that Sheive and Gilliam, who witnessed the hit-and-run, agreed that it happened quickly, thereby demonstrating that his alleged impairment was not the proximate cause of the victim's death. We disagree.

The evidence proved that Wallace struck Smith as he was attempting to cross the street in the crosswalk. Wallace admitted that he drank alcohol, used cocaine, and smoked marijuana until around 9:00 p.m., about ninety minutes before the accident. Sheive testified that Wallace was driving "very quickly" when his SUV struck Smith. Wallace admitted that he saw Smith in the street but made no efforts to brake or avoid hitting him. Contrary to Wallace's assertion, Sheive and Gilliam's accounts do not support his claim that Smith "had cleared in front of

- 9 -

[Wallace's] vehicle" and then turned back around toward the SUV. Both Sheive and Gilliam testified that Smith was crossing the street, remained in Wallace's path, and did not move back before Wallace struck him.

In fact, Wallace admitted that he saw Smith in the road, took no action to avoid him, and knew that he had hit Smith. Yet Wallace did not stop and render assistance. Instead, he left the scene and drove home. "Flight following the commission of a crime is evidence of guilt . . . ." *Speller v. Commonwealth*, 69 Va. App. 378, 388 (2018) (alteration in original) (quoting *Clagett v. Commonwealth*, 252 Va. 79, 93 (1996)). The fact that Wallace fled was circumstantial evidence of his guilty knowledge that he was responsible for the collision and was attempting to avoid discovery of his physical condition at the time.

Dr. Thatcher testified that alcohol affects many of a person's physical processes related to driving, including vision, ability to divide attention, reaction times, and judgment. She described that cocaine affects the quality of decision making and THC affects reaction times. Dr. Thatcher opined that the combination of alcohol and drugs causes greater effects than taking them in isolation.

Considering all the facts and surrounding circumstances, the trial court reasonably concluded that Wallace's impairment from a combination of alcohol and drugs was a proximate cause of the accident resulting in Smith's death. That decision was supported by the record and was not plainly wrong. *See Moseley*, 293 Va. at 465. Accordingly, the record entirely supports the trial court's conclusion that Wallace was guilty of involuntary manslaughter beyond a reasonable doubt.

CONCLUSION

The Commonwealth presented sufficient evidence to prove that Wallace was under the influence when he drove his SUV into the victim and that his impairment was a proximate cause

of Smith's death.  Therefore, the evidence was sufficient to support the conviction for

involuntary manslaughter in violation of Code § 18.2-36.1(A).  Consequently, we affirm.

*Affirmed.*